Judge LIVINGSTON dissents in a separate opinion.
HALL, Circuit Judge:
Plaintiff-appellant Rita Walsh brought this action claiming that defendant-appel-lee New York City Housing Authority’s (“NYCHA”) decision not to hire her as a bricklayer was sex-based and thus violated Title VII, the New York State Human Rights Law (“NYSHRL”), and the New York City Human Rights Law (“NYCHRL”). The United States District Court for the Southern District of New York (Buchwald, /.) granted NYCHA’s motion for summary judgment as to the Title VII and NYSHRL claims after con- *73 eluding that no reasonable jury could find, based on the admissible evidence, that NY-CHA declined to hire Walsh because she is female. The court declined to exercise supplemental jurisdiction over the NYCHRL claim and dismissed it without prejudice. For the reasons set forth below, we vacate the district court’s grant of summary judgment and remand this case for continued proceedings consistent with this opinion.
Background
On February 24, 2010, the NYCHA interviewed Rita Walsh and five male candidates for five open bricklayer positions, two in Manhattan and three in Brooklyn.[1] A group of four NYCHA employees conducted the interviews: Fred Singer and Wanda Gilliam, the Manhattan and Brooklyn Administrators for Skilled Trades, respectively; James Lollo, Technical Advisor to the NYCHA’s Technical Services Department (“TSD”); and Charles Pawson, Deputy Director of the TSD. Singer, Gilliam, and Pawson deferred to Lollo’s extensive bricklaying knowledge and experience. Lollo asked most of the questions during the interviews, including all of the technical questions related to the tasks bricklayers are expected to perform. Lol-lo’s objective was to determine if the candidate being interviewed had sufficient knowledge of bricklaying and the masonry trades. Each interview lasted from ten to thirty minutes and was immediately followed by a discussion among the interviewers of the candidate they had just interviewed. The interviewers made their hiring decisions collectively. At the time of the interviews there were no female bricklayers employed by the NYCHA, and the interviewers were not aware of any woman who had held that position in the past.
NYCHA human resources representative Osagie Akugbe oversaw the interview process. Akugbe explained the process to the candidates when they first arrived. He informed them that one candidate would not be hired, and that after the interviews he would tell them who had been selected. Akugbe also met with the interviewers to discuss, among other things, the types of questions they should avoid asking. Akugbe sat in on each interview, in part so that he would be able to report to his supervisor the reason that any candidate was not hired. Akugbe had no input in the hiring decisions, however.
Walsh was the fifth candidate interviewed. Her resume stated that since May 1995, she had been a tile mechanic with Local 7 Tile, Marble & Terrazo, a division of the Bricklayers and Allied Crafts Union. The interviewers asked Walsh about her experience working with brick and block. She informed them that she had once constructed a glass block shower at a Home Depot Expo, and that she had done “little things on her own.” J.A. 361. At their depositions, Lollo and Pawson expressed that they had been surprised that Walsh had so little experience with brick and block, and that she disclosed that fact so readily. According to Walsh, the interviewers did not ask about her experience with tile, and Lollo asked her only one technical question: how to make a mortar mix.[2] One *74 of the interviewers remarked that some people have family obligations that interfere with their ability to work overtime, and asked Walsh if she was in that situation. Walsh replied that she had no such restrictions. Physical strength did not come up during Walsh’s interview.
The interviewers unanimously decided not to hire Walsh and to hire the five other candidates. Walsh testified that after all interviews had concluded, Akugbe took her aside to tell her that she did not get the job, and stated that the interviewers wanted somebody stronger.[3] That evening, upon advice she received from Legal Momentum,[4] Walsh wrote a short note about the interview in which she stated, “I was told I was not strong enough.” J.A. at 689. Walsh produced the note as part of the record below. NYCHA represents that Walsh was not hired due to her lack of experience with brick and block, and that her sex played no part in its decision.
Walsh brought this discrimination action against NYCHA in the United States District Court for the Southern District of New York, claiming that she was denied the bricklayer position because of her sex in violation of Title VII, the NYSHRL, and the NYCHRL. In December 2013, the district court entered a Memorandum and Order granting NYCHA’s motion for summary judgment as to Walsh’s Title VII and NYHRL claims, and dismissing Walsh’s NYCHRL claim after declining to exercise supplemental jurisdiction over the same. This appeal followed.
Discussion
We review de novo a district court’s grant of a motion for summary judgment. Aulicino v. N.Y.C. Dept. of Homeless Servs., 580 F.3d 73, 79 (2d Cir. 2009). Summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). A genuine dispute exists “where the evidence is such that a reasonable jury could decide in the nonmovant’s favor.” Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014). We must “construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.” Aulicino, 580 F.3d at 79-80. This Court has long recognized “the need for caution about granting summary judgment to an employer in a discrimination ease where, as here, the merits turn on a dispute as to the employer’s intent.” Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted).
Title VII makes it unlawful for an employer to discriminate against any individual based on that person’s sex. 42 U.S.C. § 2000e-2(a)(l). Claims of sex-based discrimination under Title VII and the NYHRL are analyzed using the famil *75 iar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Pucino v. Verizon Wireless Commc’ns, Inc., 618 F.3d 112, 117 n. 2 (2d Cir. 2010) (“We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title YII discrimination claims.”). First, plaintiff must establish a prima fa-cie case of sex discrimination by demonstrating that “(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.” Liebowitz v. Cornell Univ., 684 F.3d 487, 498 (2d Cir. 2009). “The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal.” Norton v. Sam’s Club, 145 F.3d 114, 118 (2d Cir. 1998) (internal quotation marks omitted). If the plaintiff successfully establishes a prima facie case, “the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.” United States v. Brennan, 650 F.3d 65, 93 (2d. Cir. 2011) (internal quotation marks omitted). If the employer carries that burden, “the plaintiffs admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant’s employment decision was more likely than not based in whole or in part on discrimination.” Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).
A. Prima Facie Case & Legitimate Nondiscriminatory Justification
It is uncontested that Walsh’s sex places her in a protected class and that NYCHA’s decision not to hire her constituted an adverse employment action. NYCHA argues that our analysis need not proceed past the prima facie stage, however, because Walsh has failed to demonstrate that she was qualified for the bricklayer position and that her rejection occurred under circumstances giving rise to an inference of discrimination. In the alternative, NY-CHA points to Walsh’s admitted lack of experience laying brick and block as the legitimate, nondiscriminatory reason upon which its decision was based. Walsh does not argue that NYCHA failed to meet its burden at the second stage of the McDonnell Douglas analysis; instead she argues that the district court erred by concluding at the third stage of that analysis that Walsh failed to offer sufficient evidence from which a reasonable jury may find that sex was a motivating factor in NY-CHA’s decision.
The Supreme Court has held:
The prima facie case method established in McDonnell Douglas was never intended to be rigid, mechanized, or ritualistic. Rather it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff.
U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (internal citations and quotation marks omitted).
In part because Walsh’s burden at the prima facie stage is minimal, Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001), and because Walsh does not argue that NYCHA failed to prof *76 fer a legitimate, nondiscriminatory explanation for its adverse employment action, the Aikens approach is appropriate here. We thus proceed directly to the third step of the McDonnell Douglas analysis and determine whether Walsh has produced evidence “sufficient to permit a rational finder of fact to infer that the defendant’s decision was more likely than not based ... in part on discrimination.” Aulicino, 580 F.3d at 80.
B. Viewing the Evidence as a Whole
A plaintiffs evidence at the third step of the McDonnell Douglas analysis must be viewed as a whole rather than in a piecemeal fashion. Byrnie, 243 F.3d at 102 (“At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer. A court is to examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. A motion for summary judgment may be defeated where a plaintiffs prima facie case, combined with sufficient evidence to find that the employer’s asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.” (internal citations and quotation marks omitted)).[5] No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that defendant’s employment decision was more likely than not motivated in part by discrimination. To use the apt metaphor coined by Vincent Gambini (one that seems only fitting given the facts of this particular case), a plaintiff may satisfy her burden by building a wall out of individual eviden-tiary bricks.[6]
The district court erred when it failed to view Walsh’s evidence as a whole and instead set aside each piece of evidence after deeming it insufficient to create a triable issue of fact that NYCHA’s refusal to hire Walsh was based in part on the fact that she is female.
C. No History of Female Bricklayers at NYCHA
As the district court recognized, “[njotably, at the time of the interviews, no women were employed by NYCHA as bricklayers, and as far as the interviewers knew, no woman had ever held the position.” Walsh v. N.Y.C. Hous. Auth., No. 11 Civ. 6342, 2013 WL 6669381, at *3 (S.D.N.Y. Dec. 16, 2013). Noting that the *77 lack of female bricklayers “does not, by itself, compel a finding of discrimination,” the district court concluded, however, that absent additional information pertaining to the quantity and quality of any previous female applicants, it was “unable to infer a discriminatory motive from the absence of female bricklayers at NYCHA.” Id. at *9. Here, the problem with the piecemeal approach is on full display. Additionally, while the weight of this evidence (and thus the strength of any corresponding inference) would likely be enhanced if it were coupled with data regarding previous female applicants, the absence of such data does not automatically render the absence of female bricklayers irrelevant, not probative, or unfairly prejudicial.
The district court confronted a similar situation in United States v. City of New York, 713 F.Supp.2d 300 (S.D.N.Y. 2010), a pattern or practice case in which the plaintiff did not proffer statistical evidence aimed at establishing the defendant’s past treatment of the protected group. We agree with the court’s lucid analysis of that issue in City of New York:
This case was litigated without resort to statistical evidence other than the elephant in the room — the incontrovertible fact that [the New York City Department of Transportation] has never hired a provisional female Bridge Painter. Because this case proceeded without the use of statistics, the Government did not seek an inference of discrimination based on the “inexorable zero” in [the Department’s] hiring. Yet evidence of an inexorable zero is still relevant. First, a court cannot help but be circumspect where a municipal department in the country’s largest city repeatedly selects only applicants of one sex for job vacancies — after all, zero is not just another number. Second, even in cases where there is a weak inference of an inexorable zero or scant evidence of other women who applied and were rejected, a court should consider that this lack of evidence may itself be attributable to the inexorable zero.
City of New York, 713 F.Supp.2d at 317-18 (internal citations and quotation marks omitted).
NYCHA attempts to diminish the applicability to this case of the court’s reasoning in City of New York to this case on the basis that Walsh brought an individual disparate treatment claim as opposed to the type of pattern or practice claim at issue in City of New York. This tactic backfires, however. In contrast to individual disparate treatment claims, “pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination,” and require the plaintiff to “demonstrate that intentional discrimination was the defendant’s standard operating procedure.” Reynolds v. Barrett, 685 F.3d 193, 203 (2d Cir. 2012) (internal quotation marks and brackets omitted). As a result, statistical evidence of past actions is a mainstay of pattern or practice claims; the same is not true, however, of individual disparate treatment claims. See id. (“It bears noting that the heavy reliance on statistical evidence in a pattern-or-practice disparate treatment claim distinguishes such a claim from an individual disparate treatment claim.... ” (internal quotation marks and brackets omitted)). Thus, the reasoning articulated in City of New York — and its conclusion that statistical data is not required for an “inexorable zero” to have probative value — rings all the more loudly in the context of this individual disparate treatment case.
The finder of fact may properly consider the dearth of female bricklayers as one component of its cumulative inquiry. Of course, the absence of contextual or historical data is fodder for NYCHA when at *78 tempting to diminish the weight that the finder of fact ultimately attaches the absence of female bricklayers, as is evidence that NYCHA has hired women to fill positions in other skilled trades.
D. Discrepancy in Qualifications & The Interview Process
Walsh argues that her qualifications were superior to those of Joseph Giannotti and Michael Zambino, two of the successful candidates, and that a jury may use those facts to infer a discriminatory motive.[7] The district court cites this Court’s opinion in Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001), for the proposition that a plaintiff seeking to prove a discriminatory motive using a discrepancy in credentials faces a weighty burden, specifically, that “plaintiffs credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.” Walsh, 2013 WL 6669381, at *9 (quoting Byrnie, 243 F.3d at 103). The Bymie court, however, began the paragraph immediately following this statement with the following caveat, which is relevant in this case: “Nevertheless, just because the discrepancy between [plaintiff and the successful applicant’s] qualifications does not on its own have the strength to create a material issue of fact, that does not mean the discrepancy is stripped of all probative value.” Byrnie, 234 F.3d at 103. Here, again, it was error to require a single piece of evidence to bear the full weight of Walsh’s burden.
There was no tile setter position at NY-CHA; bricklayers performed that task. Two of the successful candidates testified that as bricklayers in Manhattan and Brooklyn, they spend between 50 and 90 percent of their time doing tile work. Walsh had ten years of experience working as a tile setter. Giannotti did “a lot of tile work” during the approximately seven years he worked as a maintenance mechanic for the Long Island City Board of Education, and nothing in the record indicates that Zambino had any experience working with tile. From this evidence, a rational finder of fact could reasonably conclude that Walsh was more qualified than at least one of the successful male candidates to perform one of the main tasks — if not the primary task — required of a bricklayer. While this evidence of disparity in qualifications, standing alone, falls short of establishing a discriminatory motive, it is not devoid of all probative value as to that issue.
Perhaps more significant is the evidence Walsh proffered’ regarding the interview itself that, if credited by a jury, supports her argument that NYCHA’s decision not to hire her was motivated in part by sex-based discrimination. Lollo testified that it was his usual practice to ask candidates technical questions on a number of topics. Pawson testified that the most important thing he considered when evaluating candidates was whether they answered these technical questions correctly. Finally, Walsh testified that she was asked only one technical question, which.was on the subject of making mortar mix; she was not asked any technical questions related to brick and block (the area in which her inexperience purportedly prevented her from being hired) or to tile work (which, *79 according to two of the successful candidates, comprises a significant portion of the workload of the position for which she was being interviewed). This evidence is relevant, and when marshalled effectively, may reasonably support an inference that the interviewers did not give Walsh the opportunity to demonstrate her technical knowledge because their minds had been made up before she set foot inside the interview room.
E. Akugbe’s Statement
Walsh alleges that after the interviews were over, Akugbe took her aside and told her she did not get the job because the interviewers wanted someone stronger. The district court ruled, sua sponte, that the statement was “hearsay by an individual with no decisionmaking authority, where the only evidence that it was made is plaintiff’s self-serving testimony and note.” Walsh, 2013 WL 6669381, at *10. Because NYCHA did not challenge or otherwise raise the admissibility of Akugbe’s statement, Walsh was not afforded the opportunity to address that issue. We review the district court’s ruling on the admissibility of evidence for abuse of discretion, see United States v. Gupta, 747 F.3d 111, 128 (2d Cir. 2014), and hold that such abuse is present here.
First, Akugbe’s statement is a significant piece of Walsh’s evidentiary proffer, particularly in the context of the district court’s piecemeal approach of evaluating the evidence. To wit, the district court acknowledged the importance of that evidence, stating: “Plaintiffs argument therefore hinges on the probative force of the two comments allegedly made to her on the day of her interview.” Walsh, 2013 WL 6669381, at *10 (emphasis added). Ruling that such a significant piece of evidence was inadmissible hearsay without permitting Walsh an opportunity to be heard was highly prejudicial to Walsh, the non-moving party. See Capobianco v. City of New York, 422 F.3d 47, 55 (2d Cir. 2005).
Second, Akugbe’s statement as relayed through Walsh’s testimony and note, is not inadmissible hearsay. Under the party-opponent exemption, a statement is not hearsay if it was “made by the party’s agent or employee within the scopé of that relationship and while it existed.” Fed. R. Evid. 801(d)(2)(D). Because it is uncontested that Akugbe was employed by NYCHA at the time he allegedly made this statement, applicability of the party-opponent exemption hinges on whether the statement “relates to a matter within the scope of the agency.” United States v. Rioux, 97 F.3d 648, 660 (2d Cir. 1996). The district court emphasized Akugbe’s lack of decisionmaking authority, but such authority is not required for Akugbe to be considered an agent of NYCHA. Instead, the declarant “need only be an advisor or other significant participant in the decision-making process that is the subject matter of the statement” for the statement “to be deemed within the scope of his agency.” Id. at 661. Akugbe is a human resources representative and was tasked with facilitating the interview process. He was present when the hiring decisions were made and sat in on the interviews so that he could report why any candidate was not selected—which is, of course, the subject matter of the statement at issue here. Akugbe was also responsible for informing the candidates of the interviewers’ decision, which is precisely what he was doing when he allegedly told Walsh that the interviewers were looking for someone stronger. Akugbe’s statement was thus made within the scope of his relationship with NYCHA, and is not hearsay.
To the extent the district court discounted Akugbe’s statement because “the only *80 evidence it was made is plaintiffs self-serving testimony and note,” concluding that the comment was “not persuasive evidence of discriminatory animus,” Walsh, 2013 WL 6669381, at *10, further compounded the error. This Court’s discussion of the plaintiffs affidavit in the case Danzer v. Norden Systems, Inc. is apropos:
In discrimination cases, the only direct evidence available very often centers on what the defendant allegedly said or did. Since the defendant will rarely admit to having said or done what is alleged, and since third-party witnesses are by no means always available, the issue frequently becomes one of assessing the credibility of the parties.
At summary judgment, however, that issue is necessarily resolved in favor of the nonmovant. To hold, as defendants ask us to do, that the nonmovanf s allegations of fact are (because “self-serving”) insufficient to fend off summary judgment would be to thrust the courts — at an inappropriate stage — into an adjudication of the merits. Such a radical change in the courts’ role would be inappropriate not just in the discrimination context, but everywhere.
151 F.3d at 57 (internal citations and quotation marks omitted). It is the finder of fact, not the district court ruling on summary judgment, who must determine the weight and credibility to accord Walsh’s evidence regarding Akugbe’s statement.
Finally, Akugbe’s statement is relevant to the issue of discriminatory motive. “It is the law ... that stereotyped remarks can certainly be evidence that gender played a part in an adverse employment decision.” Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 119 (2d Cir. 2004) (internal quotation marks omitted). It can hardly be contested that males are widely considered to be stronger than females. The fact that strength was not discussed during the interview does not cut against a finding of discrimination, as the district court indicated. To the contrary, if the finder of fact credits Walsh’s evidence pertaining to Akugbe’s statement, the fact that strength was not mentioned tends to support the inference that the interviewers succumbed to a sex-based stereotype because it removes one of the alternative bases on which they could have based their assessment of her strength.
Conclusion
Walsh has proffered evidence that— when viewed as a whole — is sufficient to permit a rational finder of fact to infer that NYCHA’s decision not to hire her was more likely than not motivated in part by sex-based discrimination. The dissent characterizes our holding today as “comfing] close to eviscerating the plaintiffs burden at step three of the McDonnell Douglas test,” Dis. Op. at 90-91, but we have done no such thing. At bottom, our disagreement with the dissent is factual in nature. What the dissent perceives as weak evidence or mere scintillae, Dis. Op. at 87-88, 89, 90-91, comprise a set of facts from which, if proven, a reasonable jury could conclude that NYCHA’s proffered reason for not hiring Walsh was a pretext for discrimination. That two members of a panel of this Court view a particular factual record as sufficient to pass muster at the summary judgment stage while the third member views the same record as insufficient does not amount to a change in the substantive underlying law. It is the job of judges to “apply their best judgment, guided by the statutory standard governing review and the holdings of our precedents, to the [decision below] and the record” supporting it, Chen v. Bd. of Immigration Appeals, 435 F.3d 141, 145 (2d *81 Cir. 2006). It is inevitable that, some of the time, reasonable judges conducting this process will reach conclusions different from those of their colleagues on the same set of facts. See id. Such is the case today, but neither the summary judgment standard nor the well-settled McDonnell Douglas framework has been modified as a result.
The judgment and order granting summary judgment entered by the district court are VACATED, and this case is REMANDED for further proceedings consistent with this opinion.

. Walsh and the other candidates had already taken and passed a written text for the civil service position of bricklayer administered by the Department of Citywide Administrative Services ("DCAS”). Although the question of whether Walsh met the DCAS's qualifications for the position of bricklayer is contested at the prima facie stage of the McDonnell Douglas analysis, because we proceed directly to and first consider the pretext stage, see infra Discussion, part A, that question has no bearing on our analysis.

. NYCHA offered conflicting testimony on these issues. Specifically, Lollo testified that he asked Walsh questions about tile and that *74 she answered them all correctly. Additionally, Gilliam testified that the interview revealed that Walsh was not familiar with the tools used for bricklaying or with the task of boiler overhaul, which he considered to be the most significant part of a bricklayer's job in his borough.

. Akugbe denies making this statement.

. Formerly the NOW Legal Defense and Education Fund, Legal Momentum states on its website: "Legal Momentum's mission is to ensure economic and personal security for all women and girls by advancing equity in édu-cation, the workplace, and the courts. We provide an expert legal voice to seek justice for women in law and government policy.” Legal Momentum, http://www.legalmomentum. org/mission-and-vision (last visited August 24, 2015).

. See also Danzer v. Norden Sys., Inc., 151 F.3d 50, 57 (2d Cir. 1998) ("Each of these pieces of evidence, by itself, might arguably be insufficient to permit an age discrimination suit to survive summary judgment. Taken altogether as true—as they must be at summary judgment—they are more than enough to support a jury verdict that plaintiff was picked to be 'downsized' in part because of his age.”); Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 314 (2d Cir. 1997) ("Finally, the dissent considers the record solely in piecemeal fashion, proffering innocent explanations for individual strands of evidence. The jury, however, will.be entitled to view the evidence as a whole in assessing whether there was impermissible discrimination and whether the University's proffered explanation is a pretext for that discrimination.”); Coleman v. Donahoe, 667 F.3d 835, 862 (7th Cir. 2012) ("Under the convincing mosaic approach, a retaliation case can be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction.” (internal quotation marks omitted)).

. My Cousin Vinny (Twentieth Century Fox Home Entertainment 1992).

. The district court's Memorandum and Order includes a more thorough discussion of the successful candidates' qualifications: including those of the three candidates whose qualifications Walsh does not challenge (Fernando Arlia, Emmanuel Sylvester, and Giuseppe Grippi). See Walsh, 2013 WL 6669381, at *3-5.