16-2654-cv
*Rivers v. N.Y.C. Hous. Auth.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20ᵗʰ day of June, two thousand seventeen.

PRESENT:   RALPH K. WINTER,
                      GUIDO CALABRESI,
                      DENNY CHIN,
                                   *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DEBRA CRENSHAW,
                      *Plaintiff*,

JAKWAN RIVERS,
                      *Plaintiff-Appellant*,                                    16-2654-cv

                      v.

NEW YORK CITY HOUSING AUTHORITY, JOHN B.
RHEA, individual, GLORIA FINKELMAN,
individual, CAROLYN JASPER, individual, LOCAL
237 INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, GREGORY FLOYD,
                      *Defendants-Appellees*,

CARL WALTON, individual, MELETHIL
ALEXANDER, individual, REMILDA

FERGUSON,

                    *Defendants.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:          Alexander T. Coleman, Michael J. Borrelli,
                                  Pooja Bhutani, Borrelli & Associates, P.L.L.C.,
                                  Great Neck New York.


FOR DEFENDANTS-APPELLEES          JANE E. LIPPMAN (Donna M. Murphy, *on the*
NEW YORK CITY HOUSING             *brief*), *for* David Farber, General Counsel, New
AUTHORITY, JOHN B. RHEA,          York City Housing Authority, New York, New
GLORIA FINKELMAN, and             York.
CAROLYN JASPER:


FOR DEFENDANTS-APPELLEES          STEPHEN B. MOLDOF (Kate M. Swearengen,
LOCAL 237 INTERNATIONAL           *on the brief*), Cohen, Weiss and Simon LLP,
BROTHERHOOD OF TEAMSTERS          New York, New York.
and GREGORY FLOYD:

        Appeal from the United States District Court for the Eastern District of

New York (Matsumoto, *J.*).

        **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

        Plaintiff-appellant Jakwan Rivers appeals from an August 3, 2016

judgment of the district court dismissing his claims against defendants-appellees New

York City Housing Authority ("NYCHA"), then-NYCHA Chairman John Rhea, NYCHA

Deputy General Manager for Operations Gloria Finkelman, and NYCHA Director of

Queens/Staten Island Management Department Carolyn Jasper (together, the "NYCHA

---

[*]     The Clerk of Court is respectfully directed to amend the official caption to
conform to the above.

2

Defendants"), and Local 237 International Brotherhood of Teamsters ("Local 237") and

Local 237 President Gregory Floyd (together, the "Union Defendants") under the First

Amendment, *Monell*, and 42 U.S.C. § 1983.  The district court explained its reasoning in

a Memorandum and Order issued March 31, 2016.  *See Rivers v. N.Y.C. Hous. Auth.*, 176

F. Supp. 3d 229 (E.D.N.Y. 2016).  Judgment was entered on August 3, 2016, and Rivers

filed a timely notice of appeal on August 12, 2016.  We assume the parties' familiarity

with the underlying facts, procedural history, and issues on appeal, which we reference

only as necessary to explain our decision to affirm.

**1.**    *Background*

Rivers was employed by NYCHA as a maintenance worker from 1998 to

January 2006, when he began working for Local 237 as a business agent.  Floyd became

president of Local 237 in March 2007.  Eventually, Rivers took issue with a number of

Floyd's decisions and policies, and he and several colleagues organized a slate to run

against Floyd.  Rivers publicly opposed Floyd and endorsed a different candidate for

New York City mayor than Floyd had endorsed.

Rivers contends that thereafter high-level Local 237 employees began to

harass him.  In January 2009, Floyd dismissed Rivers, and Rivers returned to NYCHA

as a maintenance worker.  He contends that NYCHA supervisors harassed him and

treated him unfairly upon his return to the agency.

In March 2009, Rivers filed an administrative petition with the New York

City Board of Collective Bargaining, claiming that Local 237 and NYCHA had colluded

3

to place him in the Bronx, far from his home, in retaliation for his opposition to Floyd (the "2009 Petition"). NYCHA and Rivers signed a written stipulation in August 2009 in which Rivers released NYCHA and Local 237 from claims relating to the claims in the petition in exchange for placement at a NYCHA facility closer to his home. In September 2009, Rivers was transferred to South Jamaica Houses in Queens.

According to Rivers, the harassment did not stop after his transfer. He asserts that he was inadequately trained for his position, which resulted in two on-the-job injuries, and that his supervisors ridiculed him and began to assign him excessively physically strenuous tasks.[1] In November 2009, Rivers complained about his treatment by NYCHA staff by email to Rhea, Jasper, and his supervisor, Margo Madden. Rivers claims that the training he received in response to his complaint was "sporadic," "superficial," and "insufficient." App. 1903.

Rivers also complains that his supervisors issued him three baseless counseling memoranda, and that he was repeatedly denied overtime opportunities and leave under the Family and Medical Leave Act to care for his ailing mother. In 2010, Rivers filed a second administrative petition with the New York City Board of Collective Bargaining, which he withdrew in June 2011.

On October 18, 2011, Rivers and plaintiff Debra Crenshaw commenced this action in the district court alleging First Amendment retaliation under 42 U.S.C.

---

[1] Rivers filed a workers' compensation claim after a July 2010 injury to his eye socket. Although NYCHA contested the claim, it was ultimately granted.

4

§ 1983. After the close of discovery, the district court granted summary judgment for the NYCHA and Union Defendants on all of Rivers's claims.[2] This appeal followed.

**2.** *Discussion*

We review a district court's grant of a motion for summary judgment *de novo*, construing the facts, resolving all ambiguities, and drawing all reasonable inferences in favor of the non-moving party. *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). We ask whether "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Rivers asserts that the individual NYCHA defendants -- Rhea, Finkelman, and Jasper -- retaliated against him for exercising his free speech and association rights under the First Amendment. He also claims that NYCHA is liable for the same retaliatory conduct under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978), and that the Union Defendants conspired with the NYCHA Defendants to violate his First Amendment rights. We discuss Rivers's arguments as to the NYCHA Defendants and Union Defendants in turn.

---

[2]     After the district court denied in part defendants' motions for summary judgment as to Crenshaw, Crenshaw and the NYCHA Defendants filed a stipulation of dismissal of Crenshaw's remaining claims.

### A. NYCHA Defendants

#### 1. Rhea, Finkelman, and Jasper

To establish a *prima facie* case for retaliation based on the First Amendment, a plaintiff must show the following: "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection between the speech and the adverse employment action." *Wrobel v. Cty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012). On appeal, Rivers challenges the district court's determinations as to the second and third elements of his retaliation claim.

Rivers first argues that the district court took an inappropriately narrow view of the alleged adverse employment actions taken against Rivers by (1) declining to consider actions taken more than one year after Rivers's protected speech and (2) failing to consider the allegedly retaliatory actions collectively and in the context of earlier conduct that was the subject of the settlement of the 2009 Petition.

Rivers correctly notes that "[w]e do not attempt to determine the outer limits of temporal proximity" in analyzing causation. *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006). Nonetheless, our review of the record indicates that any claim based on the post-2010 actions must fail because no reasonable jury could find a causal connection between Rivers's protected speech and those actions. Rivers cites to three incidents that occurred after November 2010: (1) a February 2011 counseling memorandum that was later rescinded and the accompanying loss of pay, (2) denials of transfer requests in February and March 2011, and (3) a March 2011

counseling memorandum.[3] Not only did this conduct take place over a year after the 2009 Local 237 elections, but Rivers does not point to any admissible evidence from which a jury could infer that those actions were motivated by a retaliatory animus.

Nor do the seven actions analyzed by the district court, considered together, and even in conjunction with the post-2010 events, form a "critical mass" of "seemingly minor incidents" that can support a retaliation claim.[4] *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002). Rivers's allegations of retaliation suffer from a lack of supporting information, including which, if any, defendants were involved in each event, and rely on inadmissible hearsay statements from various NYCHA and Local 237 employees. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[I]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). Drawing all inferences in Rivers's favor, the admissible record evidence establishes isolated criticism of Rivers; NYCHA's decision to contest Rivers's workers' compensation claim[5]; allegations of physically strenuous work assignments with only

---

[3]    Rivers also cites to two hearsay statements by individual Union employees in 2013 and 2014.

[4]    In light of the stipulation that Rivers signed in settlement of the 2009 Petition, we do not consider the events predating the release in our analysis. We note, however, that the district court did consider these events as background, stating that it would "not blind itself to events preceding th[e] stipulation." Special App. 55.

[5]    In analyzing this claim, the district court stated that Rivers had "point[ed] to no authority indicating that an employer's decision to contest workers' compensation benefits can constitute an adverse employment action for purposes of a retaliation claim," and that, "[i]n fact, the New York Workers' Compensation Law provides an 'exclusive remed[y]' to employees for

7

one specific example of such an assignment; denials of requests to transfer, for training, for overtime, and for FMLA leave; grants of other of Rivers's requests for training, overtime, and FMLA leave; and the issuance of several counseling memoranda. When looked at individually or as a whole, no reasonable jury could find that the alleged actions constituted "a pattern of nearly constant harassment." *Phillips*, 278 F.3d at 108.

Finally, Rivers contends that the district court erred in concluding that no rational jury could find a causal connection between Rivers's protected speech and the physically strenuous assignment that he received in November 2009. Assuming *arguendo* that the assignment was an adverse employment action, the only evidence of who assigned the task to Rivers is his own conclusory statement that "Madden began assigning [him] the most physically strenuous responsibilities . . . rather than to any other maintenance worker." App. 1902. In fact, in his formal complaint to Madden, he advised her that he was directed to complete the assignment. Accordingly, without any other evidence connecting the assignment to any defendant, Rivers cannot establish a causal connection between the assignment and his protected speech.

---

retaliation and discrimination for seeking workers' compensation." Special App. 51 (second alteration in original) (quoting *Ridgway v. Metro. Museum of Art*, No. 06-CV-5055, 2007 WL 1098737, at *5 (S.D.N.Y. Apr. 10, 2007)). The "exclusive remedy" referred to by the district court applies when an act is taken in retaliation *for seeking workers' compensation*. Here, Rivers claims that NYCHA contested his workers' compensation claim in retaliation for his First Amendment-protected speech. Any error, however, was harmless, as the claim nevertheless fails for similar reasons as the other claims: first, Rivers *was* ultimately awarded workers' compensation, and second, there is a lack of a causal link between NYCHA's challenge to the workers' compensation claim and Rivers's protected conduct.

8

**2.      NYCHA**

A municipal entity may be sued under § 1983 if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.  When a plaintiff alleges that the relevant acts "were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).  Whether the official possessed final policymaking authority in a particular area of the local government's business is a question of state law.  *Id.*

A municipal entity can also be held liable for the actions of lower-level employees where a policymaking official ordered the actions taken or "exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  In the latter case, "that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Id.* (quoting *City of Canton*, 489 U.S. at 388).

Rivers argues that the district court erred in granting summary judgment in favor of NYCHA because the allegedly retaliatory acts were directed by Rhea, then-NYCHA Chairman, who "as a matter of common sense . . . exercises policymaking authority for NYCHA." Appellant's Br. 29.  The New York Public Housing Law vests

9

the agency's responsibilities in a seven-member board. N.Y. Pub. Hous. Law § 402.

Although § 402 provides for the designation of a chairman of the board, it does not

delegate any policymaking authority to the chairman in particular. *See id.* The only

evidence that Rivers presents in support of Rhea's policymaking authority is deposition

testimony by Finkelman that the chairman is the "highest title" in NYCHA. App. 653.

Thus, because Rivers failed to establish as a matter of law that Rhea possessed "final

policymaking authority" regarding work assignments and other personnel issues,

Rivers's claims against NYCHA must be dismissed. *See Jeffes*, 208 F.3d at 57-58 ("Where

a plaintiff relies not on a formally declared or ratified policy, but rather on the theory

that the conduct of a given official represents official policy, it is incumbent on the

plaintiff to establish that element as a matter of law.").[6]

B.      **Union Defendants**

We agree with the district court's grant of summary judgment on Rivers's

conspiracy claims against the individual Union defendant. To the extent Rivers argues

that Floyd and any of the NYCHA Defendants agreed to retaliate against Rivers for

exercising his First Amendment rights, we have already determined that a jury could

not decide in his favor on his retaliation claim. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d

---

[6]      Because Rivers cannot show that Rhea had final policymaking authority for
NYCHA regarding work assignments, discipline, and other personnel issues, his argument that
NYCHA is liable under § 1983 because Rhea was on notice of and deliberately disregarded
constitutional violations by other NYCHA employees also fails. *See Amnesty Am.*, 361 F.3d at
126.

10

110, 119 (2d Cir. 1995) ("[A § 1983 conspiracy claim] will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.").

Rivers also challenges the district court's dismissal of his § 1983 claims against Local 237 for failure to demonstrate that Local 237 had a policy or practice of engaging in the complained-of conduct. *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408-09 (2d Cir. 1990) ("[*Monell*'s] rationale has been extended to private businesses.").  Although Rivers could have established instead that Floyd was an individual with "final policymaking authority" to support his claim, he points to no evidence of such authority other than Floyd's title.  Thus, we are unable to conclude as a matter of law that Floyd possessed policymaking authority regarding personnel decisions, and Local 237 cannot be liable for any alleged retaliation under *Monell*.

Finally, because Rivers's retaliation claim fails as to NYCHA, he cannot maintain a claim that Local 237 conspired with NYCHA to violate his constitutional rights.  *See Singer*, 63 F.3d at 119.

We have considered Rivers's remaining arguments and conclude they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11