23-7679-cv
*Hernandez v. Kwiat Eye and Laser Surgery, PLLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand twenty-four.

Present:     ROBERT D. SACK,
             WILLIAM J. NARDINI,
             EUNICE C. LEE
                  *Circuit Judges*,

─────────────────────────────────────────

SONIA HERNANDEZ,
          *Plaintiff-Appellant*,

          v.                                          23-7679-cv

KWIAT EYE AND LASER SURGERY, PLLC,
and DAVID M. KWIAT, M.D.,
          *Defendant-Appellees*.

─────────────────────────────────────────

*For Plaintiff-Appellant*:          Harvey P. Sanders, Sanders & Sanders, Cheektowaga, NY.

*For Defendants-Appellees*:         Scott P. Quesnel, Girvin & Ferlazzo, P.C., Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *District Judge*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 20, 2023, judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Sonia Hernandez appeals from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *District Judge*), granting summary judgment in favor of her former employer, Defendant-Appellees Kwiat Eye and Laser Surgery, PLLC, and its owner Dr. David M. Kwiat (collectively, the "Appellees" or "Kwiat Eye").[1] Hernandez, an ophthalmologist, brought this lawsuit after she was fired by Kwiat Eye in April 2018. The district court rejected her claims of age, sex, race and national origin discrimination, as well as claims of retaliation, tortious interference with contract, tortious interference with a prospective business relationship, and breach of contract. For the reasons that follow, we conclude that summary judgment was warranted on all claims and, accordingly, affirm. We assume the parties' familiarity with the case.

We review orders granting summary judgment *de novo* after construing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party. *See Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024). That means that in employment discrimination cases such as this "[w]here summary judgment was granted for the employer, we must take the facts alleged by the employee to be true." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).[2]

When there is no direct evidence of discrimination, claims of age, sex, race and national origin discrimination (including associated claims of retaliation) under Title VII of the Civil Rights

---

[1]   Kwiat Eye's motion for summary judgment was denied with respect to Appellant Hernandez's breach-of-contract claim relating to performance incentive compensation. *See* Appendix 20 ¶¶ 49—51. The parties settled this claim prior to this appeal. *See* Appendix 9, Dist. Ct. Dkt. #72—73.

[2]   Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the New York State Human Rights Law, NYSHRL § 296, are each subject to the *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010) (applying *McDonnell Douglas* to examine ADEA and NYSHRL claims); *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (same for Title VII race and national origin discrimination claims); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016) (same for Title VII sex discrimination claims); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996), and *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997) (applying *McDonnell Douglas* to retaliation claims under the ADEA). Under this framework, if the plaintiff establishes a *prima facie* case of discrimination, the defendant must then articulate a legitimate, non-discriminatory reason for its action. *See Gorzynski*, 596 F.3d at 106. If the defendant provides such a reason, the plaintiff must then come forward with evidence "that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).

## I. Discrimination Claims

To establish a *prima facie* case for either age, sex, or race and national origin discrimination, Hernandez must show that: (1) she is a member of a protected group; (2) she was qualified for her position at the time of termination; (3) she experienced an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129

3

(2d Cir. 2012). The parties do not dispute that in each instance of alleged discrimination, Hernandez was a member of a protected class and experienced an adverse employment action when she was fired. The parties instead focus their contentions on whether Hernandez was qualified for her position at the time she was fired, and whether that firing occurred under circumstances giving rise to an inference of discrimination. We need not reach the merits of the latter, because we agree with the district court's conclusion that Hernandez was not qualified for her position when her employment was terminated.

"At the summary judgment stage, a plaintiff may satisfy [the job qualification] burden by showing that she possesses the basic skills necessary for performance of the job." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 45 (2d Cir. 2015). We have held that "being 'qualified' refers to the criteria the employer has specified for the position." *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). Hernandez challenges the district court's conclusion that Kwiat Eye had cause to immediately terminate her employment after she failed to obtain approval to act as a provider for Fidelis—a health insurer that has a contract with the New York State Department of Health to provide for the health care needs of people in New York through Medicaid.

Under the terms of the employment agreement Hernandez signed with Kwiat Eye in January 2016, Hernandez agreed to "be a participating ophthalmologist in, and accept assignment for payment under the Medicaid and Medicare programs[.]" Appendix 35 § 1.2. Fidelis is one of the four core Medicaid- or Medicare-associated health insurance programs with which Kwiat Eye conducts business, as is Excellus BlueCross BlueShield ("Excellus"), from which Hernandez also failed to obtain approval to act as a participating medical provider. Dr. Kwiat explained in an affidavit that he hired Hernandez with the expectation that she would gain approval to become

4

a provider for the insurance companies working with Kwiat Eye—specifically, Fidelis. Appendix 329-30 ¶ 14. Section 1.4 of the parties' employment agreement provides that for Hernandez to retain her employment, she could not be "excluded from or sanctioned by any federal or state health care program[.]" Appendix 35 § 1.4. Appellant Kwiat Eye reserved the right to terminate Hernandez's employment for "failure of any of the conditions precedent under Paragraph 1 of [the] Agreement," or "imposition of any sanctions, including exclusion, suspension, or other limitation, relating to [Hernandez's] Medicare or Medicaid participation[.]" Appendix 40 §§ 10.3, 10.4. There is no dispute that as of her employment termination in April 2018, Hernandez had been denied accreditation as a participating provider by both Fidelis and Excellus, and she had not been accredited by any other Medicare or Medicaid program. Accordingly, she had failed to become a participating ophthalmologist under the federal programs as required by Paragraph 1.2 of her employment agreement, and indeed had been excluded from participation in them in violation of Paragraph 1.4. Because the undisputed facts show that Hernandez failed to comply with her employment agreement, we conclude that she did not establish her qualification for her position. Without this showing, Hernandez cannot make out a *prima facie* case for age, sex, race or national origin discrimination under Title VII, the ADEA, or the NYSHRL.

## II.     Retaliation

Next, Hernandez calls on this Court to vacate the district court's grant of summary judgment in favor of Kwiat Eye on her claim that her firing was a form of unlawful retaliation for her complaints about a hostile work environment. Vacatur is unwarranted, however, because Hernandez does not dispute that she did not report the alleged instances of harassment to Dr. Kwiat or any responsible corporate official.

5

"To make out a prima facie case of retaliation, a plaintiff must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). The phrase "protected activity" refers to action taken in protest of or opposition to statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also Wimmer v. Suffolk Cnty. Police Dept.*, 176 F.3d 125, 134-35 (2d Cir. 1999) (discussing the scope of protected activity under 42 U.S.C. § 2000e-3). Opposition to a Title VII violation need not rise to the level of a formal complaint to receive statutory protection and includes activities such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). "[I]mplicit in the requirement that the employer [was] aware of the protected activity is the requirement that [the employer] understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

Here, Hernandez claims that her protected activities included making workplace complaints to Mikala Foster, a licensed practical nurse who served as the clinical director at Kwiat Eye, about offensive, sex-based comments that Dr. Kwiat made in 2016, 2017, and 2018. Although the district court found that Hernandez's complaints to Foster concerning Dr. Kwiat's statements constituted protected activity, it nevertheless concluded that Hernandez had failed to make out a *prima facie* case for retaliation because she could not establish that Dr. Kwiat himself

6

was aware of those complaints. Hernandez points to no evidence suggesting that Dr. Kwiat had such knowledge. Instead, Hernandez argues that it was enough for her to have reported her complaints to Foster, because this established general corporate knowledge of her complaints. *See Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) ("[F]or purposes of a prima facie case, a plaintiff may rely on general corporate knowledge of her protected activity to establish the knowledge prong of the prima facie case."). But this contention is foreclosed by Hernandez's express admission in her Local Rule 56.1 Statement of Material Facts that she did not dispute the following: "Under Kwiat Eye's policies, Ms. Foster was not designated as a person who could receive or respond to complaints of discrimination or harassment in the workplace." Appendix 84 ¶ 99, 668 ¶ 99.

Because Hernandez's *prima facie* case of retaliation founders on her inability to support a showing of this second element concerning Kwiat Eye's awareness of her protected activity, we need not determine whether she satisfied the remaining elements of her case to conclude that summary judgment was properly granted for Kwiat Eye on this claim.

### III. Tortious Interference with Contract and Business Relations

Hernandez makes three challenges to the district court's ruling on her tortious interference with contract and business relations claims. First, Hernandez avers that the district court erroneously concluded that the job she says she lost because of the Appellees' refusal to complete a professional evaluation form was only a "prospective job offer." Second, Hernandez challenges the district court's conclusion that she failed to put forth the requisite showing that a third party would have entered a contractual relationship with her but for the tortious acts of the Appellees. And third, she challenges the district court's finding that there was no admissible evidence that the

Appellees tortiously interfered with her business relations by delaying their response to professional inquiries from Hernandez's prospective employers. This Court agrees with the district court's conclusions on each issue.

Under New York law, "[t]ortious interference with contract requires [1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of contract without justification, [4] actual breach of contract, and [5] damages resulting therefrom." *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424 (1996).

Here, Hernandez has not shown the existence of a valid contract between her and a prospective employer. Specifically, Hernandez's factual assertions are devoid of any mention of the material terms of any contract to which she or a prospective employer agreed. Nonetheless, Hernandez argues that the district court wrongly excluded the possibility that a verbal contract was formed between Hernandez and two potential employers in Texas, both of which required completion of a professional evaluation form by Kwiat Eye. She claims that her affidavit alone, which alleges that job offers were made, is enough to create a genuine dispute of fact on the question of whether a contract existed. But under New York law, absent additional factual allegations describing the "formation of the contract, the date it took place, and the contract's major terms," a complaint fails to plead the existence of a contract. *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*, 455 F. App'x 102, 104 (2d Cir. 2013).

Therefore, Hernandez's second challenge concerning the specific claim of the Appellees' alleged tortious interference with contract fails because she has not shown that a valid contract was formed with or promised by a prospective employer. Nor has Hernandez put forth any

nonconclusory assertions or evidence that would support a showing of the second and third elements of tortious contractual interference—that is, the Appellees' knowledge of a specific contract and how exactly the Appellees intentionally procured a third party's breach of this unspecified contract.

As to Hernandez's third challenge, under New York law, to sustain a claim for tortious interference with business relations, a plaintiff must show that she: (1) had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship. *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261, (2d Cir. 2015). First, it is not clear what specific business relationship Hernandez had established with a third party without the demonstrated existence of an underlying contract, the rendering of any services, or the promise of future employment. But even assuming a business relationship existed between Hernandez and a prospective employer that could have been interfered with by the Appellees, Hernandez does not present evidence to sustain a showing of actual interference. At best, Hernandez claims that the Appellees delayed their response to employment verification inquiries by prospective employers, and that this delay, in turn, compromised Hernandez's *chance* to swiftly apply for a Texas medical license or apply for jobs at medical practices in Texas. Even if true, this allegation is insufficient to survive summary judgment. In New York, "a defendant's conduct must amount to a crime or an independent tort" in order to amount to tortious interference with a prospective economic advantage. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). And so, "[c]onduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other nonbinding economic

9

relations." *Id.* Hernandez does not cite a case or statute to support the claim that the Appellees' failure to promptly complete professional evaluation forms violated any obligation by the Appellees to assist Hernandez in finding follow-on employment after her termination. Because Hernandez's allegations taken as true would not show actual interference by the Appellees in her business relations, she cannot satisfy the requisite elements to support her tortious-interference claim.

## IV.    Breach of Contract

Finally, Hernandez argues that the Appellees breached the parties' employment agreement by terminating her employment without providing her 180 days of advance notice and failing to pay her for unused vacation time. We are unpersuaded.

To sustain a breach-of-contract claim under New York law, a plaintiff must show: (1) a valid contract; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). First turning to Hernandez's claim that she was not provided advance notice of her termination, her employment agreement provided Kwiat Eye the right to terminate her employment "immediately" if she failed to comply with "the conditions precedent under Paragraph 1" of that agreement or following any imposition of "sanctions, including exclusion, suspension, or other limitation," relating to Hernandez's Medicare and Medicaid participation. Appendix 40 §§ 10.3, 10.4. Notwithstanding any other term of the employment agreement, either party could terminate the agreement by giving a 180-day written notice of termination to the other. *Id.* § 10.9. As Hernandez was denied approval to act as a provider for Fidelis and Excellus, she was in violation of Sections 1.2, 1.3, 10.3, and 10.4 of her

10

employment agreement. Her violation of these terms granted Kwiat Eye the right to take immediate action to terminate her employment without falling subject to Section 10.9 of the parties' employment agreement. Thus, the Appellees did not breach their contractual obligations to Hernandez by terminating her employment without prior notice.

On Hernandez's claim for 15 unused vacation days for 2018, "[t]he determination as to whether a former employee is entitled to be paid for accrued vacation time is governed by the contract between the parties." *Steinmetz v. Attentive Care, Inc.*, 39 Misc. 3d 148(A), at *2 (2d Dep't 2013). Reading the plain terms of the employment agreement, Section 7.1 provides that "Hernandez shall be entitled to fifteen (15) days of compensated leave during each calendar year[.]" Appendix 38 § 7.1. Neither party disputes that the employment contract is silent as to whether Hernandez is entitled to payment for any accrued and unused paid time off in the event of her termination. Hernandez instead avers that the default rule in New York is that unpaid vacation must be paid in the absence of an express waiver by the parties in a contract for employment. That proposition is without merit. The sole case cited by Hernandez in support of her argument does not mention a default New York rule that unpaid vacation must be paid when a contract is silent on the issue and, in any event, concerns an alleged violation of the New York Labor Law. *See Glenville Gage Co., Inc. v. Indus. Bd. of Appeals*, 52 N.Y.2d 777, 778 (1980). Hernandez does not allege a violation of New York's Labor Law here. Rather, she alleges a breach of contract due to the Appellees' alleged failure to pay her unused vacation time. In New York, "a contract's silence on an issue does not create an ambiguity which opens the door to the admissibility of extrinsic evidence to determine the intent of the parties." *Donohue v. Hochul*, 32 F.4th 200, 208 (2d Cir. 2022). The district court found no language in the parties' employment

11

agreement that provides Hernandez with an express or implied right to compensation for unused vacation time.  Nor did the district court find the employment agreement's terms ambiguous because of the absence of a provision saying as much.  Hernandez provides no reason for this Court to disturb that finding, and therefore no justification for upsetting the district court's grant of summary judgment for the Appellees on this claim.

*     *     *

We have considered Hernandez's remaining arguments and find them to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court in its entirety.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court