20-1147 (L)
*Wegmann v. Young Adult Institute, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of August, two thousand twenty-one.

Present:
>DEBRA ANN LIVINGSTON,
>>*Chief Judge,*
>ROBERT D. SACK,
>DENNY CHIN,
>>*Circuit Judges.*

_____

KAREN WEGMANN,

>*Plaintiff-Appellee-Cross-Appellant,*

>v.                                                                    20-1147
>                                                                       20-1150

YOUNG ADULT INSTITUTE, INC., TRUSTEES OF THE SUPPLEMENTAL PENSION PLAN FOR CERTAIN MANAGEMENT EMPLOYEES OF YOUNG ADULT INSTITUTE,

>*Defendants-Appellants-Cross-Appellees.*

_____

| | |
|---|---|
| For Plaintiff-Appellee-Cross-Appellant: | SAUL D. ZABELL, Zabell & Collotta, PC, Bohemia, NY |
| For Defendants-Appellants-Cross-Appellees: | ILANA H. EISENSTEIN, DLA Piper LLP (US), Philadelphia, PA; Mark Muedeking, *on the brief*, |

1

DLA Piper LLP (US), Washington, DC; Evan D. Parness, *on the brief*, DLA Piper LLP (US), New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Failla, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants-Cross-Appellees Young Adult Institute, Inc. ("YAI") and Trustees of the Supplemental Pension Plan for Certain Management Employees of Young Adult Institute (the "Board") (together, "Defendants") appeal from a judgment of the United States District Court for the Southern District of New York (Failla, *J.*) granting Plaintiff-Appellee-Cross-Appellant Karen Wegmann ("Wegmann") relief under the Employee Retirement Income Security Act of 1974 ("ERISA") following a one-day bench trial. Wegmann cross-appeals from the judgment insofar as the district court granted Defendants' motion for summary judgment as to her claims of gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Broadly, this action concerns the Board's denial of Wegmann's claim for benefits under its Supplemental Pension Plan for Certain Management Employees (the "SERP"), which both parties agree is a so-called "top hat" plan. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**A. Wegmann's ERISA Claim**

Following a bench trial, we generally review a "district court's findings of fact for clear error and its conclusions of law *de novo*." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 26 (2d Cir. 2002) (citation omitted). In an ERISA benefits appeal, we

apply the same legal standards as are required of the district court on its review of a plan administrator's determinations. *See Hobson v. Metro Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). Where language in a "benefit plan gives [an] administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of [a] plan," courts typically apply an arbitrary-and-capricious standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). As such language is present in the plan at issue here, Defendants ask us to apply the arbitrary-and-capricious standard.[1] But our sister courts are divided as to the proper standard of review in cases involving top hat plans. *Compare Goldstein v. Johnson & Johnson*, 251 F.3d 433, 441–44 (3d Cir. 2001) (holding that a *de novo* standard of review applies), *with Comrie v. IPSCO, Inc.*, 636 F.3d 839, 842 (7th Cir. 2011) (rejecting the Third Circuit's approach and applying arbitrary-and-capricious review under *Firestone*), *and Niebauer v. Crane & Co.*, 783 F.3d 914, 923 (1st Cir. 2015) (applying arbitrary-and-capricious review, reasoning that the Third Circuit's approach creates "a distinction without a difference" (internal quotation marks omitted)). We need not wade into the waters of this debate, as we conclude that the Board erred in denying Wegmann's claim for benefits even under the more lenient arbitrary-and-capricious standard.

* * *

The district court held that the Board arbitrarily and capriciously denied Wegmann's claim for benefits principally because the Board's decision rested on an unreasonable interpretation of

---

[1] The August 6, 2013, amendment to the SERP endowed the Board with the authority "to interpret the Plan, [] to resolve ambiguities, inconsistencies and omissions," and "to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan." App'x at 175. It also provides that the Board's interpretation of SERP terms "shall be binding, final and conclusive upon all interested parties." *Id.* Language such as this is ordinarily sufficient to trigger deferential review under *Firestone. See Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 487–89 (2d Cir. 2006).

the SERP. On appeal, Defendants argue that the district court erred in declining to defer to the Board's interpretation of the SERP. We disagree.

Under the arbitrary-and-capricious standard, where a plan participant and a plan administrator offer "two competing yet reasonable interpretations" of a plan, a court "must accept that offered by the administrator[]." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995). But where an administrator "imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008) (internal quotation marks omitted). Notably, in interpreting plan terms for purposes of an ERISA claim, "we apply a federal common law of contract, informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002). We therefore review the plan "as a whole, giving terms their plain meanings." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002).

Here, the Board rested its denial of Wegmann's claim for benefits in large part on an interpretation of the SERP's "Eligibility" provision, Section 10.1.2, which provides:

> Each Management Employee who shall complete 15 years of service with [YAI] and whose compensation is not fully considered in the computation of Federal Social Security benefits, shall be eligible to participate in the Plan. Entry into the Plan as a Plan Participant shall be on the July 1 coincident with or next following the employee's compliance with the Eligibility Requirements.

App'x at 150. The Board interpreted the phrase "eligible to participate" in this provision to indicate that employees do not automatically become SERP participants upon satisfying the enumerated eligibility criteria. Rather, in the Board's view, the SERP both requires employees

4

to obtain Board approval to enter into the SERP and endows the Board with discretion to assess an employee's entitlement to benefits based on factors external to the SERP.

The Board's interpretation of the SERP "impose[d] a standard not required by the [SERP's] provisions" and was "inconsistent with [the SERP's] plain words." *McCauley*, 551 F.3d at 133 (internal quotation marks omitted). Section 10.1.2 outlines three basic criteria upon which an employee's eligibility for SERP benefits is contingent. It then provides that "[e]ntry into the Plan as a Plan Participant *shall* be on the July 1 coincident with or next following the employee's compliance with the Eligibility Requirements." App'x at 150 (emphasis added). This language is mandatory. Thus, once an employee satisfies the eligibility requirements set forth in Section 10.1.2, she enters into the plan as a plan participant on the July 1st coincident with or following her compliance. Further demonstrating that the requirements set forth in Section 10.1.2 are exhaustive, the SERP elsewhere defines a "Participant" as "an employee who satisfied the eligibility requirements of Subsection 10.1.2." *Id.* Nowhere does the SERP purport to require Board approval for an employee's entry into the SERP or otherwise to give the Board discretion to assess an employee's entitlement to benefits based on criteria external to the SERP.

Defendants stress that a reading of the SERP that provides for automatic enrollment would render the words "eligible to" mere surplusage, as eligibility and entitlement are not synonymous. It may be that the word "eligible" means "[f]it and proper *to be selected* or to receive a benefit." Eligible, BLACK'S LAW DICTIONARY (11th Ed. 2019) (emphasis added). But, as outlined above, the SERP's language plainly provides a mechanism regarding both eligibility for and entry into the plan.

Defendants also argue that we should defer to the Board's interpretation of the SERP because the Board had a longstanding practice of selecting and voting to approve participants in

the SERP. But they have failed to argue, either here or in the district court, that the SERP was not integrated by its own terms or that their practice introduced ambiguity into the meaning of the SERP—arguments that at least one of our sister circuits has deemed appropriate in review of a top hat plan. *See Senior Exec. Benefit Plan Participants v. New Valley Corp.,* 89 F.3d 143, 149–50 (3rd Cir. 1996) (holding that a court may consider extrinsic evidence to determine the meaning of a top hat plan "in the absence of an integration clause in the plan" or where such evidence renders the terms of the plan ambiguous). In the absence of such arguments, we see no reason to disturb the SERP's plain text based on extrinsic evidence of its meaning.

Ultimately, Wegmann met the SERP's eligibility requirements. Defendants do not dispute that Wegmann ascended to the level of a Management Employee when she became CFO in 2006. Nor do they dispute that Wegmann completed 15 years of service and had a salary above the maximum Social Security taxable wage. Therefore, the district court properly concluded that the Board's denial of Wegmann's claim for benefits was arbitrary and capricious.[2]

### B. Wegmann's Gender Discrimination Claims

We review grants of summary judgment *de novo*, "construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor." *Burns v. Martuscello*, 890 F.3d 77, 83 (2d Cir. 2018) (internal quotation marks omitted). Summary judgment is proper only when "there is no genuine dispute as to any material fact and

---

[2] Because we conclude that the Board's denial of Wegmann's claim for benefits was based on an unreasonable interpretation of the SERP, we need not address Defendants' argument that the district court erred in concluding that conflicts of interest affected the Board's decision and in assigning those conflicts weight as part of its analysis under the arbitrary-and-capricious standard. *See Roganti v. Metropolitan Life Ins. Co.*, 786 F.3d 201, 217 (2d Cir. 2015) (noting that the existence of a conflict of interest is a factor to be considered as part of a court's arbitrary-and-capricious analysis). That is, the Board's denial of Wegmann's claim was arbitrary and capricious even assuming *arguendo* that it was not influenced by conflicts of interest.

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### a. Title VII and NYSHRL

The district court granted Defendants' motion for summary judgment as to Wegmann's Title VII and NYSHRL claims, holding: (1) that Wegmann failed to establish a *prima facie* case of gender discrimination because the facts in the record do not give rise to an inference of discrimination; and (2) that Defendants proffered legitimate, non-discriminatory reasons for denying Wegmann's claim for benefits, which the record does not suggest were pretextual. We affirm on the first of these grounds and need not address the latter.

We analyze Title VII and NYHRL gender discrimination claims under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016). Under that framework, the plaintiff must first present a *prima facie* case of discrimination "by demonstrating that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 75 (internal quotation marks omitted). The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (internal quotation marks omitted). If the defendant articulates such a reason, the plaintiff must then come forward with evidence that it "is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Wegmann contends that the circumstances give rise to an inference of discrimination based on a theory of disparate treatment. "A showing of disparate treatment—that is, a showing that the employer treated [the] plaintiff less favorably than a similarly situated employee outside [her] protected group—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted). "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (internal quotation marks omitted). Put another way, "where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to [the] plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

Here, Wegmann and her proposed comparator, Joseph Rut ("Rut"), followed near-identical career trajectories at YAI. Like Wegmann, Rut held the titles of Assistant Controller, Controller, and CFO over the course of his tenure at YAI. But the material similarities stop there. First, whereas Rut was conditionally admitted into the SERP by Board resolution in 1993, at which time he was CFO, Wegmann did not even begin to pursue admission into the SERP until over a decade later. *Cf. id.* (finding similarity where the plaintiff and her comparator were, *inter alia*, "fired at roughly the same time"). Second, the composition of the Board when Wegmann made her formal request for benefits under the SERP in 2017 differed markedly from the composition of the Board when Rut was conditionally admitted into the SERP in 1993. *Cf. Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (finding no similarity where the plaintiff and her comparators, *inter alia*, had different supervisors). Third, to the extent the Board considered

potential tax liabilities on the advice of outside counsel in attempting to freeze the SERP in 2005 and in arriving at its denial of Wegmann's claim, the changes in tax law that the Board considered occurred after Rut had already been admitted to the SERP. *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) (suggesting that a plaintiff and her comparator "must have been subject to the same standards" (internal quotation marks omitted)). Last, to the extent that the Board considered Wegmann's role in an alleged Medicaid fraud scheme at YAI in arriving at its determination, Wegmann has made no showing that Rut "engaged in conduct similar to" her. *See id.* (internal quotation marks omitted).

On this record, Wegmann fails to establish a *prima facie* case of discrimination based upon evidence of disparate treatment, as no reasonable jury could conclude that her situation and Rut's situation were "sufficiently similar . . . to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness*, 263 F.3d at 54. We therefore conclude that the district court properly granted Defendants' motion for summary judgment as to Wegmann's Title VII and NYSHRL claims.

### b. NYCHRL

The district court granted Defendants' motion for summary judgment as to Wegmann's NYCHRL claim, holding that the record does not support the conclusion that Wegmann experienced differential treatment because of her gender. We agree. We have explained that "NYCHRL claims must be analyzed separately and independently from federal and state discrimination claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013). To make out an actionable claim under the NYCHRL, a "plaintiff need only show that her employer treated her less well [than other employees], at least in part for a discriminatory reason." *Id.* at 110 & n.8. Here, even under the broader auspices of the NYCHRL, Wegmann's

9

claim for gender discrimination fails: Based on the evidence recounted above, no reasonable jury could conclude that Wegmann was treated "less well" than other employees at YAI in part due to her gender. *Id.* We therefore conclude that the district court properly granted Defendants' motion for summary judgment as to Wegmann's NYCHRL claim.

\* \* \*

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk