Moss v. Colvin

## UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Submitted: October 26, 2016    Decided: January 9, 2017)

Docket No. 15-2272

_____

ANDREW MOSS,

*Petitioner-Appellant,*

—v.—

JOHN COLVIN, Superintendent, Mid-State Correctional Facility,

*Respondent-Appellee.*\*

_____

B e f o r e :

KATZMANN, *Chief Judge*, WESLEY and CARNEY, *Circuit Judges.*

_____

Appeal from a final judgment, entered on June 19, 2015, in the United States District Court for the Southern District of New York (Crotty, *J.*), denying

---

\* The Clerk of Court is directed to amend the official caption to conform to the caption above.

petitioner Andrew Moss's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(d). During Moss's trial for criminal sale of a controlled substance in the third degree, the trial court closed the courtroom to the general public while the undercover officers involved in Moss's arrest testified. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, we hold that: (1) the New York Court of Appeals' determination that a reviewing court may infer from the record that a trial court considered, as it must, reasonable alternatives to closure was not an unreasonable application of clearly established federal law as determined by the Supreme Court; and (2) the New York Court of Appeals' conclusion that the government established an overriding interest justifying closure was also not an unreasonable application of clearly established federal law as determined by the Supreme Court. Accordingly, we **AFFIRM** the judgment of the district court.

_____

Richard M. Greenberg and Joseph M. Nursey, Office of the Appellate Defender, New York, NY, *for Petitioner-Appellant*.

Barbara D. Underwood, Solicitor General, Nikki Kowalski, Deputy Solicitor General, and Margaret A. Cieprisz, Volunteer Assistant Attorney General, *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, *for Respondent-Appellee*.

_____

PER CURIAM:

Petitioner-Appellant Andrew Moss appeals from a decision of the United States District Court for the Southern District of New York (Crotty, *J.*) denying his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. During the state trial testimony of the undercover officers involved in Moss's arrest, the state trial court closed the courtroom to the general public to protect

the safety of the officers. Moss appealed his conviction, arguing that the closure of the courtroom during the testimony of one of the officers violated his Sixth Amendment right to a public trial. The New York Court of Appeals affirmed his conviction. *See People v. Echevarria*, 21 N.Y.3d 1, 11–19 (2013).

In this appeal, Moss asserts that the New York Court of Appeals' decision is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the Supreme Court in *Waller v. Georgia*, 467 U.S. 39 (1984), and *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam). In particular, Moss contends (1) that the New York Court of Appeals incorrectly held that a reviewing court may infer from the record that a trial court fulfilled its obligation to consider alternatives to closure, and (2) that the New York Court of Appeals unreasonably concluded that the government had established an overriding interest justifying closure. The district court denied the petition and, applying the deferential standard of The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), we affirm its judgment. Limited as we are by AEDPA's deferential standard, on the record before us, we cannot conclude that the New York Court of Appeals' decision was

3

contrary to, or involved an unreasonable application of, clearly established law or was based on an unreasonable determination of the facts.

## BACKGROUND

Andrew Moss was arrested in July 2007 for selling crack cocaine to an undercover officer (known as "UC 2454") near West 135th Street and Broadway in Manhattan. He was charged in New York State Supreme Court with criminal sale of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.39(1).

Before Moss's trial, the government requested that the court limit access to the courtroom during the testimony of UC 2454 and another undercover officer identified as UC 5986.[1] The trial court held a hearing, at which both undercover officers testified, to consider the request. Following the officers' testimony, the trial court indicated that it had tentatively determined, subject to hearing further from counsel, to "keep the general public out when these two undercovers testify." Joint App. at 152–53. Moss's counsel objected to the closure and suggested, as an alternative, that an officer be stationed at the courtroom door to screen individuals wishing to enter. The trial court did not expressly assess this

---

[1] Moss does not challenge the courtroom closure with respect to UC 5986.

proposed alternative. Instead, the trial court ruled that, in light of its concerns for the undercover officers' safety, it would close the courtroom to the public during their testimony, with the exception of Moss's mother and any other family members who did not live in the area of the arrest. If any family members who lived in the area of the arrest wished to observe trial during the testimony of the undercover officers, the trial court determined that it would "face those decisions when they arise." Joint App. at 163.

The case proceeded to trial and Moss was convicted. Moss appealed his conviction contending, *inter alia*, that the trial court's closure of the courtroom violated his Sixth Amendment rights. The New York Supreme Court, Appellate Division unanimously affirmed. *See People v. Moss*, 89 A.D.3d 600, 600–01 (1st Dep't 2011). The New York Court of Appeals then granted review in Moss's case, together with the cases of two other defendants raising similar Sixth Amendment challenges. It then found no reversible error in the closures in each case, while reversing the conviction of one of the other two defendants on unrelated, jury instruction grounds. *See Echevarria*, 21 N.Y.3d at 11–22.

After the United States Supreme Court denied certiorari, Moss filed a petition for a writ of habeas corpus. The magistrate judge (Francis, *J.*) issued a

Report and Recommendation (the "R&R") recommending that the petition be denied. Moss timely filed objections to the R&R, but the district court adopted the R&R in its entirety and denied the petition. *See Moss v. Colvin*, No. 14 Civ. 2331 (PAC) (JCF), 2015 WL 3824749, at *1 (S.D.N.Y. June 18, 2015). Moss filed a timely notice of appeal, and this court granted a certificate of appealability.

## DISCUSSION

We review a district court's decision denying a petition for a writ of habeas corpus de novo. *Dixon v. Miller*, 293 F.3d 74, 78 (2d Cir. 2002).[2] AEDPA instructs

---

[2] The district court reviewed one of Moss's objections to the R&R (regarding whether the government met its burden of establishing an overriding interest justifying closure) only for clear error. It did so on the basis that the objection was "unquestionably a rehashing of the original arguments raised in the petition." *Moss*, 2015 WL 3824749, at *5 (citing *Borrero v. Colvin*, No. 14 Civ. 5304 (LTS) (SN), 2015 WL 1262276, at *1 (S.D.N.Y. Mar. 19, 2015) ("When a party . . . reiterates original arguments, . . . the court will only review the magistrate's report for clear error.")). On appeal, the government argues that Moss has waived further judicial review of that objection, and that, if we do review the objection, we must do so for clear error. First, we reject the government's argument that Moss's failure to file specific objections to the R&R regarding Moss's overriding-interest challenge resulted in a waiver. Even if it were the case that Moss failed to lodge a specific objection to the magistrate judge's recommendation, it is clear that the district court did not consider the issue waived and went on to evaluate the magistrate judge's determination for clear error, which was well within its discretion. *See Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989) ("Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate."); *see also Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where a

6

that an application for a writ of habeas corpus shall not be granted where a state court adjudicated the claim on the merits, unless that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To conclude that a state court decision involved an unreasonable application of clearly established federal law, the petitioner must show that the state court applied the law in a manner that was "objectively unreasonable." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) (per curiam)) (internal quotation marks omitted). A state court determination that a claim lacks merit is not objectively unreasonable

---

district court conducts . . . review of an issue that was not raised in objection to [a] magistrate's report, this court may disregard the waiver and reach the merits."). Accordingly, we may consider the merits ourselves. Second, we are skeptical that clear error review would be appropriate in this instance, where arguably "the only way for [Moss] to raise . . . arguments [on that point] [was] to reiterate them." *Watson v. Geithner*, No. 11 Civ. 9527(AJN), 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). We need not resolve which standard of review applies to this objection, however, because we conclude that Moss's argument does not prevail even under de novo review.

7

if "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

The Sixth Amendment, by way of the Fourteenth Amendment, guarantees a state criminal defendant "the right to a speedy and public trial." U.S. Const. amend. VI. However, the right to a public trial is not absolute and "may give way in certain cases to other rights or interests." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). In those rare instances, "the balance of interests must be struck with special care." *Id.* To aid courts in this balancing act of determining whether a courtroom closure is justified, the Supreme Court articulated the following four-part test in *Waller*: (1) "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced" if the courtroom is not closed, (2) "the closure must be no broader than necessary to protect that interest," (3) "the trial court must consider reasonable alternatives to closing the proceeding," and (4) the trial court "must make findings adequate to support the closure." *Id.* at 48. In *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam), the Supreme Court clarified that under the third prong of *Waller*, "trial courts are required to consider alternatives to closure even when they are not offered by the

8

parties." 558 U.S. at 214. Moreover, the Court instructed that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Id.* at 215.

Moss's appeal focuses on *Waller*'s first and third prongs: the government's overriding interest, and the trial court's consideration of alternatives to closure. We conclude with respect to both issues that the New York Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

With respect to *Waller*'s first prong, the New York Court of Appeals correctly articulated the standard for determining whether an overriding interest exists that justifies closure. *See Echevarria*, 21 N.Y.3d at 11. It recognized that, while "[t]he safety of law enforcement officers 'unquestionably' may constitute an overriding interest," *id.* at 12 (quoting *People v. Ramos*, 90 N.Y.2d 490, 498 (1997)), the party moving for closure still "must demonstrate a 'substantial probability' that the identified interest will be prejudiced by an open courtroom," *id.* (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 14 (1986)). In finding that the government had met its burden, the New York Court of Appeals noted that UC 2454 continued to work in the area of the arrest, had received numerous

9

threats in the past, had encountered suspects in the courthouse, and had taken steps to protect his identity when entering courthouses. *See id.* at 13–14. It held that, "[t]aken together, the record amply supports the trial court's determination that a specific link existed between the officer's safety and his open-court testimony." *Id.* at 14. In light of the record before us, we cannot conclude that the New York Court of Appeals unreasonably applied the law in reaching that conclusion. *See Rodriguez v. Miller*, 537 F.3d 102, 110 (2d Cir. 2007) (affirming denial of habeas petition where "[t]he Undercover [officer] . . . had been threatened before and intended to return to [the neighborhood of the arrest] in the near future"); *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997) (en banc) (upholding closure where three officers testified that "they were continuing their undercover work and would soon be returning in an undercover capacity to the same areas where the defendants had been arrested" and where the officers had described those areas "with particularity"). We therefore find no basis for reversal on *Waller*'s first prong.

As to the third *Waller* prong, Moss contends that the New York Court of Appeals' conclusion that the trial court considered reasonable alternatives to closure was contrary to clearly established Supreme Court precedent. Moss takes

specific issue with the New York Court of Appeals' determination that it could *infer* from the record in his case that the trial court had considered alternatives to closing the courtroom, even if the trial court did not discuss them expressly on the record. *See Echevarria*, 21 N.Y.3d at 19 ("On the record before us, it is fair to imply that the trial courts concluded that no lesser alternative would have adequately protected the officers' safety and, therefore, the courts discharged their prong three duty to consider reasonable alternatives."). He maintains that *Waller* and *Presley* require that the court make express, specific findings to show that it considered alternatives and that the trial court's "silence" here shows that it did not comply with this requirement.

Moss relies heavily on *Presley*'s requirement that "the particular interest, and threat to that interest, must 'be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Presley*, 558 U.S. at 215 (quoting *Press-Enter. Co.*, 464 U.S. at 510). Notably, we read this specific portion of *Presley* as relating to the articulation of findings specific to the government's overriding interest, not to the court's consideration of reasonable alternatives. To apply this language to an analysis under *Waller*'s third prong would require us to extend the rationale of

11

*Presley*, which is beyond the scope of our review under AEDPA. *Cf. White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) ("'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" (quoting *Yarborough*, 541 U.S. at 666)). Moreover, this statement in *Presley* conveys that the purpose of requiring a court to make specific findings is to enable a reviewing court to determine whether a closure was appropriate. If that is so, then we cannot conclude that the New York Court of Appeals' decision was necessarily contrary to the principles articulated in *Presley*, so long as the record is sufficiently detailed such that a reviewing court can glean that the trial court considered and rejected alternatives and, in turn, "can determine whether the closure order was properly entered." *Presley*, 558 U.S. at 215 (internal quotation mark omitted).

Moss's reference to cases interpreting *Presley* does not support a conclusion otherwise. As Moss acknowledges, we may only "look to lower courts of appeals decisions 'to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court.'" *Nolan v. Money*, 534 F. App'x 373, 378 (6th Cir. 2013) (unpublished opinion) (alteration in

12

original) (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). None of the cases Moss cites turn on the issue of whether a reviewing court may look to the record as a whole to determine whether a court considered reasonable alternatives, and, therefore, they do not help resolve whether that practice is contrary to *Presley*. *See, e.g., United States v. Gupta*, 699 F.3d 682, 687–88 (2d Cir. 2011); *United States v. Waters*, 627 F.3d 345, 361 (9th Cir. 2010); *United States v. Agosto-Vega*, 617 F.3d 541, 547–48 (1st Cir. 2010); *State v. Cox*, 304 P.3d 327, 333–34 (Kan. 2013); *Lilly v. State*, 365 S.W.3d 321, 333 (Tex. Crim. App. 2012); *State v. Wise*, 288 P.3d 1113, 1118 (Wash. 2012) (en banc).

Accordingly, we conclude that, under AEDPA's deferential standard, the New York Court of Appeals' determination that we may look to the record as a whole to determine whether the trial court complied with *Waller*'s third prong was not contrary to clearly established Supreme Court precedent. In turn, the New York Court of Appeals did not unreasonably conclude that the record here sufficiently shows that the trial court considered alternatives to closure. *See Echevarria*, 21 N.Y.3d at 18–19; *see also id.* at 25 (Lippman, J., dissenting in part and concurring in part) ("I join the Court's affirmance in *People v. Moss* because there the trial court considered what it thought was the only reasonable

13

alternative to closure, placing an officer outside the courtroom, and considered and rejected this option on the record."); *People v. Moss*, 89 A.D.3d at 600 ("Instead of ordering a complete closure, the court permitted defendant's family to attend [and] . . . it considered but rejected an alternative to closure proposed by defendant.").

To be sure, Moss's argument that the trial court must "consider all reasonable alternatives to closure" on the record is not without some persuasive force. Pet'r Br. at 27 (quoting *Presley*, 558 U.S. at 216) (internal quotation mark omitted). The "implied consideration" standard developed by the New York Court of Appeals in *People v. Echevarria* and *People v. Ramos* is arguably in tension with the trial court's duty of *sua sponte* consideration of reasonable alternatives imposed by *Waller v. Georgia* and *Presley v. Georgia*. *See Echevarria*, 21 N.Y.3d at 23 (Lippman, J., dissenting in part and concurring in part) ("There is nothing in [*Presley*'s] language that would suggest that the Supreme Court had in mind that an 'implied' consideration of alternatives would be constitutionally acceptable. . . . It is to state the obvious that *Presley* does not contemplate an unreviewable, purely contemplative exercise in satisfaction of a trial court's obligation to consider reasonable alternatives to court closure.").

Without *some* consideration of alternatives on the record, even if well short of the explicit discussion of all possible alternatives that Moss seeks, there will often be little basis on which a reviewing court can determine whether the trial court adequately engaged in the *Waller* and *Presley* analysis, and in particular whether the trial court met its obligations under *Presley* to consider *sua sponte* various alternatives to closure. The record here, where there is some ambiguity as to why the trial court did not implement defense counsel's proposed alternative to closure, illustrates the value of explicit consideration and rejection of reasonable alternatives. Trial courts weighing a potential courtroom closure would do better to make a clear record of their application of the *Waller/Presley* test, including their consideration of reasonable alternatives to closure. Constrained as we are in this case by AEDPA's deferential standard, however, and on this particular record, we cannot here say that the New York Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.