24-1103-cv
*Nambiar v. The Central Orthopedic Group, LLP*

# United States Court of Appeals

# For the Second Circuit

August Term 2024

Submitted:  April 30, 2025
Decided:  October 28, 2025

No. 24-1103

SEEMA V. NAMBIAR, M.D.,

*Plaintiff-Appellant,*

*v.*

THE CENTRAL ORTHOPEDIC GROUP, LLP; DAVID
ZITNER, M.D.; SCOTT SILVERBERG, M.D.; JORGE
BAEZ, M.D.; MITCHELL KESCHNER, M.D.; JORDAN
KERKER, M.D.; FERNANDO CHECO, M.D.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of New York
No. 2:19CV00938, Seybert, *Judge*.

Before:     LYNCH, MERRIAM, KAHN, *Circuit Judges*.

Plaintiff-appellant Dr. Seema V. Nambiar appeals from a judgment entered in the United States District Court for the Eastern District of New York (Seybert, *J.*), granting summary judgment to defendants-appellees The Central Orthopedic Group, LLP, ("COG") and its partners. Nambiar brought this action alleging discrimination on the basis of age and sex, retaliation, and breach of contract.

The District Judge referred defendants' motion for summary judgment to the Magistrate Judge who issued a report and recommendation ("R&R") recommending that the motion be granted in its entirety. The District Judge concluded that Nambiar had failed to properly object to the R&R and therefore reviewed the R&R only for clear error. On clear error review, the District Judge adopted the R&R in full.

The District Judge erred by reviewing the R&R only for clear error. Nambiar filed timely and specific written objections to the R&R, requiring the District Judge to review the R&R *de novo*. Contrary to the District Judge's conclusion, Nambiar's objections were proper, even though she raised the same arguments in her objections to the R&R that she had raised in opposition to the motion for summary judgment.

However, we review a grant of summary judgment *de novo*; therefore, the District Judge's failure to conduct the required *de novo* review of the R&R is harmless. On our own *de novo* review, we conclude that defendants were entitled to summary judgment as to each of Nambiar's claims that are preserved for appellate review. Accordingly, we **AFFIRM** the judgment of the District Court.

> Pankaj Malik, PM Law PC, New York, NY, *for Plaintiff-Appellant.*
>
> Daniel S. Moretti, Tina S. Bhatt, Landman Corsi Ballaine & Ford P.C., New York, NY, *for Defendants-Appellees.*

SARAH A. L. MERRIAM, *Circuit Judge*:

Plaintiff-appellant Dr. Seema V. Nambiar brought this action alleging

discrimination on the basis of age and sex, retaliation, and breach of contract

against her previous employer, defendant-appellee The Central Orthopedic Group, LLP, ("COG") and its partners, defendants-appellees Dr. David Zitner, Dr. Scott Silverberg, Dr. Jorge Baez, Dr. Mitchell Keschner, Dr. Jordan Kerker, and Dr. Fernando Checo (collectively, with COG, "defendants"). She appeals from the District Court's order granting summary judgment to defendants. *See Nambiar v. Cent. Orthopedic Grp., LLP*, No. 2:19CV00938(JS), 2024 WL 1270812 (E.D.N.Y. Mar. 26, 2024).

The District Judge referred defendants' motion for summary judgment to the Magistrate Judge who issued a report and recommendation ("R&R") recommending that the motion be granted in its entirety. *See Nambiar v. Cent. Orthopedic Grp., LLP*, No. 2:19CV00938(JS)(ARL), 2024 WL 1528526 (E.D.N.Y. Feb. 1, 2024).

The District Judge concluded that Nambiar had failed to properly object to the R&R, and therefore reviewed the R&R only for clear error. On clear error review, the District Judge adopted the R&R in full.

We conclude that the District Court erred by reviewing the R&R only for clear error. Nambiar filed timely and specific written objections to the R&R, triggering a requirement that the District Judge review the R&R *de novo*.

3

Contrary to the District Judge's conclusion, Nambiar's objections were proper, even though she raised the same grounds in her objections to the R&R that she had argued in opposition to the motion for summary judgment.

However, we review a grant of summary judgment *de novo*; therefore, the District Judge's failure to conduct the required *de novo* review of the R&R is harmless. On our own *de novo* review, we conclude that Nambiar failed to establish a genuine dispute of material fact to withstand defendants' motion for summary judgment. Accordingly, we **AFFIRM** the judgment entered by the District Court.

## BACKGROUND

The facts set forth below are drawn from the evidence submitted in connection with the motion for summary judgment. These facts are undisputed unless otherwise stated.

Nambiar is a board-certified physical medicine and rehabilitation doctor. Nambiar was employed by COG, a medical practice specializing in orthopedics, as a pain management specialist. In or about November 2013, COG and Nambiar executed an employment contract with a three-year term of employment to commence in April 2014; the contract anticipated that after three years, if the

4

contract had not been terminated, Nambiar would become a partner in the practice. *See* App'x at 2232.

Defendants assert that by the fall of 2014, they began receiving complaints from patients and staff about Nambiar. In January 2016, citing those complaints, defendants informed Nambiar that they intended to terminate her employment contract. Defendants proposed that the parties enter into a new contract that would extend Nambiar's employment term for one year but also remove the promise of partnership. Defendants asserted that they wanted to give Nambiar an opportunity to improve her performance – a "let's-see-how-you-do phase" – before they committed to providing her with a stake in the practice. App'x at 709.

Nambiar asserted that the complaints against her were meritless, and she refused to sign the proposed new agreement. Defendant Silverberg informed Nambiar in February that if she did not sign the new agreement, her employment would probably be terminated. *See* App'x at 298. On March 15, 2016, defendants informed Nambiar that she needed to make a decision by March 18, 2016, about whether she would sign a new agreement, or she would be replaced. *See* App'x at 398-99. Nambiar failed to sign a new agreement, and on

5

March 21, 2016, COG gave her a letter terminating her employment with 90 days' notice.  *See* App'x at 2815-16.

Defendants asserted that Nambiar's employment was terminated because of the complaints against her.  Nambiar alleged that her employment was terminated because of unlawful discrimination on the basis of age and sex, and in retaliation for her statement that she intended to file a complaint with the Equal Employment Opportunity Commission ("EEOC").  Nambiar brought this action in the Eastern District of New York on February 15, 2019, alleging the following claims: (1) age discrimination, in violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §623, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §296(1); (2) discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 and the NYSHRL, N.Y. Executive Law §296(1); (3) retaliation, in violation of Title VII, 42 U.S.C. §2000e-3, and the NYSHRL, N.Y. Executive Law §296(7); (4) breach of contract, in violation of state common law; and (5) aiding and abetting discrimination and retaliation, in violation of NYSHRL, N.Y. Executive Law §296(6).  *See* App'x at 19-31.  After discovery concluded, defendants filed a motion for summary judgment; Nambiar filed an opposition

6

and a motion to strike certain defense exhibits.

District Judge Gary R. Brown held a conference on October 27, 2021, during which he orally granted defendants' motion for summary judgment on Nambiar's retaliation claim. On December 15, 2021, the case was reassigned to District Judge Joanna Seybert. On January 5, 2022, the parties filed two fully briefed motions: defendants' motion for summary judgment on Nambiar's remaining claims; and Nambiar's cross-motion for reconsideration of Judge Brown's decision to grant summary judgment to defendants on Nambiar's retaliation claim and to strike certain defense exhibits.

On October 26, 2023, Judge Seybert referred the pending motions to Magistrate Judge Arlene R. Lindsay. Magistrate Judge Lindsay issued an R&R on February 1, 2024, recommending that defendants' motion for summary judgment be granted and Nambiar's motion to reconsider and to strike be denied. On March 26, 2024, finding no clear error in the R&R and adopting the R&R in its entirety, District Judge Seybert granted summary judgment in favor of defendants and denied Nambiar's motion to reconsider and to strike. This appeal followed.

## DISCUSSION

We begin with the District Court's review of the R&R.

## I.    Review of a Magistrate Judge's R&R by a District Judge

The Federal Magistrates Act ("FMA"), and its procedural counterpart,

Federal Rule of Civil Procedure 72, permit a district judge to designate a

magistrate judge[1] to hear any pretrial matter.  *See* 28 U.S.C. §636(b)(1); Fed. R.

Civ. P. 72.  A district judge may refer a case-dispositive matter such as a motion

for summary judgment to a magistrate judge, but "only for recommendation, not

for decision."  *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010).  When

referred a dispositive matter, the magistrate judge issues an R&R with "proposed

findings of fact and recommendations for the [case's] disposition."  28 U.S.C.

§636(b)(1)(B).  The parties then have an opportunity to object to the R&R, in

whole or in part.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  "As to a

dispositive matter, any part of the magistrate judge's recommendation that has

---

[1] In 1990, Congress formally changed the title for this role from "magistrate" to "magistrate judge" "to reflect more accurately the responsibilities, duties and stature of the office."  136 Cong. Rec. S17570-02 (1990).  In spite of this change having been made 35 years ago, many attorneys appearing in federal court, including the counsel authoring the briefs in this appeal, continue to refer to magistrate judges by the wrong title.  To be clear, the proper title is "magistrate *judge*" because magistrate judges are *judges*.

8

been properly objected to must be reviewed by the district judge *de novo*." *Arista Recs.*, 604 F.3d at 116; *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to properly object to the R&R, the district judge reviews the R&R only for clear error. *See* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

In evaluating the District Judge's review of the R&R in this case, we are confronted with the question: what does it mean to "properly object" to an R&R?

A proper objection must be timely. Failure to timely object may "operate[] as a [forfeiture][2] of further judicial review" of the magistrate judge's decision. *Mario v. P & C Food Mkts.*, 313 F.3d 758, 766 (2d Cir. 2002).

A proper objection must be specific. "A plaintiff is deemed to have [forfeited] an objection to a magistrate judge's report if he does not present his claims to the district court. In order to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (citation modified); *see also Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120-21

---

[2] We use the term "forfeiture" to describe a party's failure to raise an argument rather than "waiver," which is reserved for a party's "intentional relinquishment of a known right." *Doe v. Trump Corp.*, 6 F.4th 400, 409 n.6 (2d Cir. 2021) (citation modified).

(2d Cir. 2022).  "Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review."  *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988).  "The point of making objections is to tell the district judge – who, under §636(b)(1) must make the final decision and enter judgment – what issues the parties actually dispute."  *Id.*  "Merely referring the court to previously filed papers or arguments does not constitute an adequate objection."  *Mario*, 313 F.3d at 766.

A proper objection generally may not raise new arguments not previously made before the magistrate judge.  *See*, *e.g.*, *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020) (affirming district judge's decision to disallow objections advancing an argument that "had not been raised during summary judgement proceedings before the Magistrate Judge"); *see also Bus. for a Better N.Y. v. Angello*, 341 F. App'x 701, 706 (2d Cir. 2009) (summary order) (noting that the court need not consider arguments "raised for the first time in the objections to the report and recommendation").

Under these standards, Nambiar properly objected to the R&R – at least as to some issues.  Nambiar filed timely, specific objections to the R&R.  *See* App'x at 3043-52.  In her objections, she challenged the Magistrate Judge's

10

recommendation that summary judgment be granted in defendants' favor on her sex discrimination claim on two grounds, arguing, first, that the Magistrate Judge improperly relied on evidence that would be inadmissible at trial, and second, that the Magistrate Judge ignored evidence showing that defendants' justification for firing her – complaints by patients and staff – was pretextual. She also objected to the Magistrate Judge's recommendation that judgment be entered in defendants' favor on her aiding and abetting claim.

The District Judge deemed Nambiar's objections improper, finding "them to be mere reiterations of the arguments in the original papers that were fully considered, and rejected, by Judge Lindsay." Special App'x at 8 (citation modified). In other words, the District Judge applied an additional qualification to the definition of a "proper objection," requiring that an objection may not reiterate to the district judge arguments already raised before the magistrate judge. That was error.

As the Supreme Court has recognized, the role of the magistrate judge in today's federal judicial system is "nothing less than indispensable." *Peretz v. United States*, 501 U.S. 923, 928 (1991) (citation modified). "[I]t is no exaggeration to say that without the distinguished service of [magistrate judges and

11

bankruptcy judges], the work of the federal court system would grind nearly to a halt." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668 (2015). But the authority of magistrate judges is limited by Article III, as Congress recognized in enacting the FMA. The FMA "ensure[s] that the essential attributes of the judicial power remain in Article III tribunals," *EEOC v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017) (citation modified), while also empowering magistrate judges to undertake the fullest range of responsibilities, by "carefully delineat[ing] the types of matters that may be referred to magistrate judges" for binding decision, *id.*, and by requiring that the district judge review case-dispositive recommendations *de novo*.

Accordingly, *de novo* review of those portions of the magistrate judge's report and findings to which a party timely objects is "crucial to the constitutionality of the Federal Magistrate Act." *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (citation modified). Such review may only be foregone when the parties do not object to the magistrate judge's recommendation. *See Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023); *cf. S.J. v. New York City Dept. of Educ.*, No. 21-240, 2022 WL 1409578, at *1 n.1 (2d Cir. May 4, 2022) (summary order) ("A district court must conduct a *de novo* review of any portion of the report to which

12

a specific objection is made on issues raised before the magistrate judge, and the remaining portions of the report as to which no objections were made are reviewed for clear error." (citation modified)).

A number of district court decisions in this Circuit, however, have limited their consideration of objections, as the District Judge did in this case, by refusing to review an R&R *de novo* where the objecting party relied on an argument already raised and rejected by the magistrate judge.  *See, e.g.*, *U.S. Small Bus. Admin. v. Ameritrans Holdings, LLC*, No. 20CV01166(JS), 2024 WL 704621, at *2-3 (E.D.N.Y. Feb. 21, 2024) (applying clear error review where "[d]efendants' regurgitation of their original arguments [was] readily apparent when comparing their [underlying motion] to their [o]bjections"); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) ("When a party . . . simply reiterates the original arguments, the Court will review the R&R strictly for clear error." (citation modified)); *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to

the Magistrate Judge." (citation modified)).

This rule places a litigant in an impossible position. She may not raise an argument for the first time in her objections to the magistrate judge's R&R. But she also may not raise an argument she has already argued. That cannot be. A litigant who has fully and forcefully argued her point in front of the magistrate judge and lost *must* be able to make that argument again to the district judge. Otherwise, what value would there be in objecting? As the Fourth Circuit has explained, "[a]side from needlessly curtailing litigants' access to an Article III judge, [this] could leave litigants with no available arguments." *Elijah*, 66 F.4th at 460 n.3.

We have signaled in past decisions that this approach is untenable. As we stated: "[W]e are skeptical that clear error review would be appropriate in this instance, where arguably the only way for [the objecting litigant] to raise arguments on that point was to reiterate them." *Moss v. Colvin*, 845 F.3d 516, 519 n.2 (2d Cir. 2017) (citation modified). More recently, we acknowledged that district courts in this Circuit have held that when "the party makes only conclusory or general objections, or simply reiterates his original arguments, the [district court] reviews the Report and Recommendation only for clear error."

14

*Miller*, 43 F.4th at 120 (alteration in original) (quoting *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009)).  But as we explained, that principle should be applied *only* "when the objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition."  *Id.* (citation modified).  Where a litigant's objections take "issue with a specific legal conclusion in the report and recommendation," they should be considered *de novo*, even if they repeat an argument raised before the magistrate judge.  *Id.* at 121; *see also Ramgoolie v. Ramgoolie*, No. 22-1409, 2024 WL 4429420, at *2 (2d Cir. Oct. 7, 2024) (summary order) (noting *Miller*'s expression of "skepticism" about the district court's clear error review of objections simply because they reiterated arguments made to the magistrate judge).

In sum, a litigant objecting to an R&R may not simply rest on the briefs considered by the magistrate judge; she must lodge a specific objection to some specific aspect of the R&R.  But the objection not only may, but often must, repeat arguments that were previously raised.  When a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*.  The District Judge here,

15

understandably following an approach that has gone unchecked for some years, rejected Nambiar's proper objections to certain portions of the R&R on the ground that the same arguments raised in the objection were also made to the Magistrate Judge. That was error. Because Nambiar properly objected to the R&R's findings as to her claims of sex discrimination and aiding and abetting discrimination, the District Judge should have reviewed *de novo* the Magistrate Judge's recommended disposition of those claims.

## II. Preservation of Claims

Nambiar properly objected to the R&R's findings as to her claims of sex discrimination and aiding and abetting discrimination, preserving those claims for appellate review. But defendants contend that Nambiar has failed to preserve certain of her claims. *See* Appellees' Br. at 27-28, 39-40. Before turning to the merits, we consider that threshold issue.

### A. Age Discrimination Claims

Nambiar failed to object to the R&R's recommendation that summary judgment be granted in favor of defendants on her age discrimination claims. In her objections, Nambiar made only *one* passing reference to her claims of age discrimination. *See* App'x at 3050 ("This evidence shows that while Defendants

16

fired Dr. Nambiar because of her age and sex, they sought a replacement who was 'eager, young and looking to work hard' to enhance their revenues."). In her reply brief on appeal, she cites this one reference as evidence that she "*did* raise the issue of age discrimination in her objections." Reply Br. at 13. But this claim is belied by the entirety of the objections. The objections set out three arguments, headed as follows: "I. Dr. Nambiar objects to the Report's recommendation of summary judgment on Dr. Nambiar's sex discrimination claim," App'x at 3044; "II. Dr. Nambiar also objects to Judge Lindsay's recommendation to deny Dr. Nambiar's motion to strike," App'x at 3051; "III. Dr. Nambiar also objects to Judge Lindsay's recommendation to dismiss Dr. Nambiar's claim for aiding and abetting discrimination," App'x at 3051. Age discrimination is not mentioned. Contrary to Nambiar's assertion, the objections did not "clearly apprise[] the district court" that she contested the R&R's findings as to age discrimination. Reply Br. at 14.

Where parties receive clear notice of the consequences, failure to timely object to a magistrate judge's report and recommendation forfeits further judicial review of the magistrate judge's decision. *Mario*, 313 F.3d at 766. The R&R provided the requisite clear notice, stating: "[T]he parties shall have fourteen (14)

17

days from service of this Report and Recommendation to file written objections. . . . Failure to file objections within this period waives the right to appeal the District Court's Order." App'x at 3041. Mentioning an issue only "obliquely and in passing" is insufficient to preserve it for review. *Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013). Accordingly, we conclude that Nambiar has forfeited further judicial review of her age discrimination claims.

Nambiar contends that this rule is "a nonjurisdictional one whose violation the Court may excuse in the interests of justice," but takes the discussion no further. Reply Br. at 14 (citation modified). She makes no argument as to why the "interests of justice" in this case call for us to excuse her failure to object. Nor does she identify, much less analyze, any errors in the R&R's analysis of these claims. We therefore find no reason to excuse the forfeiture of further judicial review of her age discrimination claims.

## B. Retaliation Claims

The situation regarding Nambiar's retaliation claims is more complicated. Judge Brown orally granted defendants' summary judgment motion on these claims during a pre-motion conference. Nambiar filed a motion for

18

reconsideration, and the Magistrate Judge recommended that reconsideration be denied. Nambiar did not file sufficiently specific objections regarding this recommendation and thus has forfeited further judicial review *of the denial of reconsideration*. Nambiar did not, however, forfeit further review of the actual grant of summary judgment on the retaliation claims. That ruling was made by the District Judge, rather than the Magistrate Judge, such that this appeal is the first opportunity to challenge that decision.

## C. Breach of Contract Claim

Finally, we decline to review Nambiar's breach of contract claim. The Magistrate Judge recommended that the District Judge decline to assert supplemental jurisdiction over Nambiar's breach of contract claim after dismissal of all federal claims. Nambiar expressly stated in her objections to the R&R that she "does not object to the recommendation that this Court decline to exercise pendent jurisdiction over Dr. Nambiar's breach of contract claim, as the claim can still be brought in New York state court under CPLR 205(a)." App'x at 3044 n.1. She maintains the same position on appeal. Accordingly, she has expressly waived that claim.

19

**III.    Merits of the Remaining Claims**

We proceed now to review the merits of the grant of summary judgment as to Nambiar's preserved claims: her substantive claims for gender discrimination, aiding and abetting that discrimination, and retaliation.  As part of our review, we consider Nambiar's argument that certain of defendants' exhibits in support of summary judgment should have been stricken.

"We review an award of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor."  *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).  "Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c)).  "We may affirm summary judgment on any ground supported by the record, even if it is not one on which the district court relied."  *McElwee*, 700 F.3d at 640.

**A.    Sex Discrimination**

At summary judgment, we apply the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to

claims of sex discrimination brought pursuant to Title VII and the NYSHRL.[3]  *See*

*Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016).  The plaintiff must

first establish a *prima facie* case of discrimination by showing that: "(1) she was

within the protected class; (2) she was qualified for the position; (3) she was

subject to an adverse employment action; and (4) the adverse action occurred

under circumstances giving rise to an inference of discrimination."  *Id.* at 75

(citation modified).  If she "meets this prima facie burden, a presumption of

discriminatory intent arises, and the burden shifts to [the employer] to articulate

a legitimate, non-discriminatory reason for firing her."  *Knox v. CRC Mgmt. Co.*,

134 F.4th 39, 48 (2d Cir. 2025) (citation modified).  If the employer does so

successfully, the burden shifts back to the plaintiff to show that "the legitimate

reasons offered by the defendant were not its true reasons[] but were a pretext

for discrimination."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)

(citation modified).  While this framework allows the evidentiary burden to shift

---

[3] "The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the . . . more liberal pleading standard" of the New York City Human Rights Law.  *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 n.9 (2d Cir. 2025) (citation modified).  "The amendment took effect on August 12, 2019."  *Id.*  Nambiar's claims arose and her complaint was filed before the amendment took effect, and so we apply the pre-amendment standard here.

between parties, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation modified).

Upon our own *de novo* review, we find that defendants are entitled to summary judgment on Nambiar's claim of sex discrimination. Assuming without deciding that Nambiar has established a *prima facie* case of discrimination, we conclude that defendants have articulated a legitimate, nondiscriminatory reason for Nambiar's termination that is supported by admissible evidence in the record. We further conclude that Nambiar has not met her burden of showing that the reason provided by defendants was mere pretext for discrimination.

### 1. Defendants' asserted legitimate, non-discriminatory reason for termination of Nambiar's employment

Defendants assert that they terminated Nambiar's employment based on the "onslaught of patient and staff complaints concerning her unprofessional conduct and her refusal to sign a new [non-]partner track employment agreement." Appellees' Br. at 34. In support of their motion for summary judgment on this point, they offered testimony from staff regarding some of the

22

complaints; written documentation of patient complaints; and testimony from

defendant partners regarding their personal knowledge of both staff and patient

complaints.  Nambiar contends the District Court should have excluded the

written documentation of patient complaints from the summary judgment record

because those records would be inadmissible at trial on authentication and

hearsay grounds.

"Summary judgment cannot be granted on the basis of inadmissible

evidence."  *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 142 (2d Cir. 2000); *see also*

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir.

2009) ("[O]nly admissible evidence need be considered by the trial court in ruling

on a motion for summary judgment." (citation modified)).  Addressing

Nambiar's challenge to the written evidence of patient complaints, the Magistrate

Judge concluded that "there is nothing about the exhibits relied upon by the

defendants to suggest that they would be unable to establish their authenticity at

trial through one of the defendants, the plaintiff or a proper custodian."  App'x at

3004 n.1.  Nambiar contends that was error.  But even if admission of those

particular records was error, and even if we decline to consider *all* of the

evidence challenged by Nambiar, we nonetheless conclude that defendants have

23

met their burden of showing a legitimate, non-discriminatory reason for asking Nambiar to sign a new contract and, eventually, when she refused, terminating her employment.

At least two witnesses – physician partners in the practice – testified in their depositions to personal knowledge of patient complaints about Nambiar. *See* App'x at 1212-14 (Checo), 1078 (Silverberg). Another physician partner testified to having witnessed "contentious interactions" and "heated conversations" between Nambiar and members of the staff. *See* App'x at 945 (Zitner). Such testimony would be admissible at trial, both for the truth of the matters asserted – that is, that the doctor received patient complaints about Nambiar or observed her in conflict with staff – and to establish those defendants' "then-existing state of mind" when deciding to terminate her employment. Fed. R. Evid. 803(3). Other physician partners testified to being aware of patient complaints about Nambiar. *See, e.g.*, App'x at 843-45 (Kerker), 1548-49 (Keschner). Nambiar herself testified that she discussed the patient complaints with Checo. *See, e.g.*, App'x at 287-89.

Multiple partners also testified to personal knowledge of staff complaints about Nambiar. *See, e.g.*, App'x at 889-90 (Kerker), 945 (Zitner), 1033

24

(Silverberg), 1217 (Checo).  At least one of the staff members who made complaints about Nambiar testified about her own experience working with Nambiar and the events that led her to complain.  *See* App'x at 1398-99, 1413.  In fact, Nambiar's *own* statements confirm that there was friction between herself and certain staff members.  For example, Nambiar asserted that she "complained repeatedly" to the practice manager, Patricia DeDomenico, about her medical assistant's "poor attitude and insubordination" and about another employee's "poor performance."  App'x at 2770.  The medical assistant, in turn, reported that Nambiar had yelled at her in front of a patient, and on a separate occasion ordered her to retrieve an object from the "sharps bin" in violation of safety protocols.  App'x at 2774-75.  Ultimately, DeDomenico reassigned the medical assistant and the other employee to another department so that they no longer worked with Nambiar.  *See* App'x at 2775.

The undisputed evidence establishes that defendants received numerous complaints about Nambiar, and that at least some of those complaints required them to take remedial measures.  This evidence sufficiently establishes that defendants had a legitimate, non-discriminatory reason for terminating Nambiar's contract.

### 2. Nambiar's claim of pretext

Because defendants have established a legitimate, non-discriminatory basis for Nambiar's termination, Nambiar must "produce not simply 'some' evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation modified).

Nambiar has produced "some evidence" in support of her claim that defendants' proffered reason for her termination was mere pretext. But, as set forth below, we conclude that the evidence Nambiar points to is insufficient to give rise to a genuine dispute of material fact.

First, Nambiar asserts that defendants' treatment of Dr. Yohan Lee and Dr. Santosh Mathen shows that defendants favored male physicians. Evidence showing disparate treatment of "similarly situated employees" may support a finding that an "adverse job action was a pretext for . . . discrimination." *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). But Nambiar fails to offer evidence regarding her proposed comparators that would support a finding of discriminatory intent.

Lee, a pain management physician, was hired by defendants to replace Nambiar. Nambiar asserts that Lee is less qualified than she was. *See* Appellant's Br. at 25. When she was hired by defendants, Nambiar was already board-certified in pain management; Lee was not. But Lee was hired on less favorable terms than Nambiar had been. Indeed, unlike Nambiar's first contract, Lee's did not include a path to partnership. *See* App'x at 1344-45. The difference in qualifications appears to have appropriately resulted in a difference in treatment. And Nambiar asserts that Mathen, a "male physician who was [also] under review for his performance" by defendants, was given "preferential treatment." Appellant's Br. at 33. But in fact, Mathen was required to sign a new contract that extended his probationary period, similar to what was proposed to Nambiar, and was only made a partner after he "clean[ed] up his act." App'x at 2836.

Next, Nambiar points to remarks made by defendants that suggest a general gender bias. When evaluating whether such comments are probative of discriminatory intent, we consider a number of factors, including: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3)

the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms.*, 616 F.3d 134, 149 (2d Cir. 2010). It is well established that "'stray remarks' alone do not support a discrimination suit." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).

The circumstances of the allegedly gender-biased remarks are disputed. But even drawing all inferences in Nambiar's favor and accepting her version of the facts for purposes of summary judgment, we conclude that the remarks do not support an inference that gender animus influenced defendants' decision making. Critically, Nambiar provides almost no context for the purportedly discriminatory remarks. She testified that Checo told her that "other partners" had made comments referring to the pain management department staff as "girls," and commented that "there is too much drama . . . because they are female." App'x at 390-91. She also testified that she "was told" that someone made a comment "that once [she, Nambiar,] got the new contract that maybe we should not send patients down there when she is having her period because, you know, they are all going to be, you know, girls together." App'x at 390. These

28

alleged comments surely invoke gender stereotypes.[4] Nambiar does not assert, however, that she heard them directly, nor that she is aware of the context in which they were made, nor even who made them. She makes no claim that such comments were made close in time to the decision to terminate her employment, or that they had any relationship to that decision.

Nambiar further asserts that Silverberg "told her that patients and staff had complained that Dr. Nambiar was 'too unfriendly,' 'too demanding,' 'too aggressive,' and that she needed to be, in his words, sweeter, kinder, and more gentle; and to 'give [the patients] something,' as COG was a small practice that relied [on] referrals." App'x at 170. In her briefing, Nambiar describes these complaints as "criticisms" leveled by the defendants, and calls them "blatantly sexist." Appellant's Br. at 35. But these "criticisms" came from "patients and staff," not from Silverberg or any other defendant. App'x at 170. Under Nambiar's own version of the events, Silverberg came to her with reports of specific complaints from patients and staff, and asked her to adjust her conduct in direct response to those complaints. That does not support an inference that the ultimate decision to terminate Nambiar's employment based in large part on

---

[4] Indeed, under certain circumstances, such comments could support an inference that gender played a role in an employment decision.

these very complaints was pretext for discrimination.

Finally, Nambiar contends that she "saw thousands upon thousands of patients while working at COG," yet defendants point to just seven complaints against her, most of which were made close in time to her termination. Appellant's Br. at 28. She asserts that "[t]he record suggests that Defendants contrived this 'onslaught' to justify firing Dr. Nambiar for cause," and "was sufficient evidence of pretext." Appellant's Br. at 30. But even accepting as true that the complaints were lodged only in 2015 and 2016, Nambiar fails to explain how that would show pretext for discrimination. Nothing in the record suggests that defendants colluded to produce or create this evidence. *Cf. Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 50 (2d Cir. 2025) (noting circumstantial evidence that defendants colluded to create a record of complaints against plaintiff with the intent of causing her employment to be terminated). And even if there were reason to be suspicious of the timing of the complaints, Nambiar has not suggested that they were falsified.

In sum, Nambiar has failed to point to evidence that would support a finding that defendants' proffered reason for her termination – complaints from patients and staff – was mere pretext. We therefore conclude that defendants are

30

entitled to summary judgment as to Nambiar's sex discrimination claims. For

the same reasons, we conclude that summary judgment is warranted on

Nambiar's aiding and abetting claim.

### B. Retaliation

Like substantive discrimination claims, "retaliation claims are reviewed

under the burden-shifting approach of *McDonnell Douglas*." *Zann Kwan v.*

*Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *see also Littlejohn v. City of New*

*York*, 795 F.3d 297, 315 (2d Cir. 2015). "To present a prima facie case of retaliation

. . . , [Nambiar] must show that (1) she participated in an activity protected by

Title VII, (2) this participation was known to [defendants], (3) [defendants]

subjected her to a materially adverse action thereafter, and (4) a causal

connection existed between the protected activity and the adverse action." *Moll*

*v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (citation modified). "A

plaintiff must show a connection between the protected activity and the adverse

action, that is, that the retaliation was a 'but-for' cause of the employer's adverse

action." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (citation

modified).

Nambiar asserts that on March 16, 2016, she informed DeDomenico that

31

she intended to file a complaint with the EEOC, and on March 17, 2016, she in fact sent a complaint to the EEOC.[5]  *See* App'x at 2811, 132.  She contends that her termination several days later was in retaliation for these actions.  *See* Appellant's Br. at 39-40.  This temporal proximity is the sole basis for Nambiar's assertion of a causal connection between her EEOC complaint and her termination.  *See id.* at 40 ("Because Dr. Nambiar was terminated three days after speaking with Ms. DeDomenico, the dismissal of her retaliation claim . . . was in error and this evidence supports an inference of but-for causation.").

We conclude that Nambiar cannot meet the fourth prong of the prima facie case – causal connection – because the undisputed facts in the record confirm that defendants decided to terminate her employment *before* her March 16, 2016, comment regarding an EEOC complaint.  In January 2016, defendants approached Nambiar indicating that she needed to sign a revised contract.  *See* App'x at 130.  In February 2016, Silverberg expressly informed Nambiar that if she did not sign the revised contract, her employment would be terminated.  *See* App'x at 298-99.  As Nambiar herself has attested, she repeatedly refused to sign the revised contract.  *See* App'x at 321("On multiple occasions, I said I would not

---

[5] Nambiar does not assert that defendants actually received the complaint before she was terminated.

sign it."); *see also* App'x at 2472 (EEOC complaint letter indicating that Nambiar

told Silverberg on January 28, 2016, that she "would not sign the new contract").

"In light of Plaintiff's prior refusals to sign [a] new employment agreement, on

March 7, 2016," defendants began the process of seeking a replacement for

Nambiar by placing an online advertisement for a pain management doctor.

App'x at 2806.  When defendants again met with Nambiar on March 11, 2016,

they urged her to sign the revised contract, but "at the same time . . . they were

looking for her replacement."  App'x at 2808-09.  Nambiar alleges in her

complaint that at a March 15, 2016, meeting, Silverberg "continued to pressure"

Nambiar to sign the revised contract, and informed her "that he had placed an

advertisement and received four resumes from" potential replacements for her

position.  App'x at 132.

Thus, the undisputed facts reveal that before Nambiar ever mentioned an

EEOC complaint, the wheels were already in motion to terminate Nambiar's

employment – as she was well aware.  Indeed, in her March 17, 2016, EEOC

complaint Nambiar stated that defendants were "forc[ing] [her] out of [her]

position," App'x at 2475, and that by the time of her February 25, 2016, meeting

with defendants, the termination of her existing contract was a *"fait accompli,"*

33

App'x at 2473. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). We therefore conclude that defendants were entitled to summary judgment on Nambiar's retaliation claims. Furthermore, even if Nambiar could make out a prima facie case of retaliation, for the same reasons discussed above, defendants would be entitled to summary judgment because they have presented a legitimate nonretaliatory reason for termination, and Nambiar has not raised a dispute of fact as to whether that reason was mere pretext.

## CONCLUSION

For the reasons set forth herein, we AFFIRM the judgment entered by the District Court.